**Kevin JONES, Appellant,**

v.

**Joseph RYAN, Superintendent, State Correctional Institution at Dallas, PA, Office of Attorney General of Pennsylvania, Office of District Attorney of Philadelphia, Appellees.**

**No. 91–1821.**

United States Court of Appeals, Third Circuit.

Argued March 9, 1992.

Decided March 5, 1993.

Jeffrey P. Shender (argued), Defender Ass'n of Philadelphia, Philadelphia, PA, for appellant.

Elizabeth J. Chambers (argued), Office of Dist. Atty., Philadelphia, PA, for appellees.

Before HUTCHINSON, ALITO and HIGGINBOTHAM, Circuit Judges.

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

Petitioner Kevin Jones appeals from the denial of his petition for a writ of habeas corpus under 28 U.S.C. § 2254(d). In his application for habeas relief, Jones argued that at trial the prosecution used its preemptory challenges to strike black persons from the jury in violation of his right to equal protection under the Fourteenth Amendment to the United States Constitution. We find, pursuant to *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), that Jones established a *prima facie* case of purposeful discriminatory exercise of peremptory challenges by the prosecution. We also find that the prosecution failed to articulate racially neutral nonpretextual explanations for striking black persons from the jury. Accordingly, we hold that Jones' right to equal protection was violated. We, therefore, reverse

the order of the district court denying habeas relief and remand for the court to enter an order granting Jones' writ of habeas corpus.

### I.

*Factual Background*

On August 2, 1988, Kevin Jones, a twenty-three year old black man, was arrested and charged under the penal laws of Pennsylvania with one count of robbery, two counts of theft, one count of simple assault, one count of criminal conspiracy and one count of resisting arrest. Jones was accused of attacking a sixty-nine year old white man and stealing his pension check. Jones went to trial before a jury in the Court of Common Pleas of Philadelphia, Pennsylvania. On January 20, 1989, the jury found Jones guilty of one count of robbery and one count of criminal conspiracy. On March 2, 1989, the court sentenced Jones to a two-and-one-half to ten year term of imprisonment on the robbery conviction and suspended sentence on the conspiracy conviction.

*Jury Selection*

During jury selection, the venire panel consisted of forty persons. Thirty two of the venirepersons were white and eight were black. Of the eight black venirepersons, four were called for voir dire. The prosecutor exercised four of his seven peremptory challenges. He used three of the four to strike all but one of the black venirepersons called. (N.T. Jury Voir Dire at 41) [hereinafter App.][1]. At the conclusion of voir dire, defense counsel moved to strike the jury on the ground that the prosecutor used the race of three venirepersons as the basis for the exercise of the Commonwealth's peremptory challenges. Defense counsel argued that the prosecutor sought to eliminate black venirepersons

---

1. Mr. Frederick Sharp, a black man who was juror number 252, was empaneled in the last round in which the ninth, tenth, and eleventh jurors were selected. Mr. Sharp was not empaneled upon completion of voir dire of the first group of venire persons of which he was a member. The record reflects that defense counsel attempted to strike Mr. Sharp for cause on

the ground that a friend of Mr. Sharp was the victim in a robbery in which the assailant was not apprehended. The court did not dismiss Mr. Sharp because the venireman responded affirmatively to the court's direct inquiry whether Mr. Sharp could be a "fair and unbiased juror".

in violation of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Defense counsel invoked the *Batson* rule at the close of voir dire and thus preserved the record for appeal. *Riddick v. Edmiston*, 894 F.2d 586, 592 n. 7 (3d Cir.1990). The following colloquy took place immediately preceding the conclusion of the jury selection:

Defense Counsel:

May the record reflect in this matter, this is a jury composed of eleven white persons and one black person.... Under the doctrine of *Batson versus United States*, I would ask the Commonwealth to explain to the Court why it chose to strike all of the black jurors that came up in this matter.

The Court:

Did you look at this panel when it came in.... I think about thirty-two were white and about eight were black.

Defense Counsel:

The Commonwealth seemed to have made an effort in this black on white robbery of an elderly man, made an attempt to have an all white jury in here and under the case law, they have to give an explanation.

The Court:

They don't have to give an explanation unless he wants to. I am not asking for an explanation. It is a random thing that we did here, that we did today.

The Prosecutor:

If I can respond to one matter for the record. At the time I chose juror number ... 252, Frederick Sharp, who is a black gentleman, I still had four strikes, Judge. And there were several people in the courtroom of both races, black and white. If it was my intention to systematically exclude people on the basis of race from this jury, I certainly had every opportunity to do that. I chose not to. I chose to put him on the jury. I would suggest to the Court, in light of the fact that there was only four people who were black who were put on the panel and questioned during voir dire, there is no systematic exclusion here. That is all I want to say.

The Court:

Very well.

Defense Counsel:

I would move to have this jury struck and begin again.

The Court:

I shall not. You know, this Batson motion, in a case like this ... I know why you are doing it, raising it, raising every possible objection that you possibly can on behalf of your client. But a motion like this is divisive, it creates enormous problems but attorneys do it all the time. Attorneys are creating racial hatred in this City.

App. at 41–44.

The court permitted the trial to proceed. Further, the trial record indicates that the trial court failed to make a specific finding of whether Jones had established a *prima facie* case of racially discriminatory exercise of peremptory challenges under *Batson*.

*Exhaustion Of State Remedies*

Following his conviction, on March 2, 1990, Jones renewed the *Batson* claim through post-verdict motions at his sentencing hearing. At the hearing, defense counsel argued that the prosecutor had engaged in discriminatory misuse of preemptory challenges by striking three of the four the black venirepersons. (N.T. Sentencing Proceedings at 2) [hereinafter Supp.App.]. Again, rather than making a specific finding on whether Jones had established a *prima facie* case of racially discriminatory exercise of preemptory challenges by the prosecutor, the court commented in response to defense counsel's arguments:

The Court:

Listen I Think your office is promoting racism in the court. Every time a defender comes in, he raises that question, and I think it's unfair in provoking trouble within our community.

Defense Counsel:

Your honor, I think that question at side bar during voir dire, is not provoking trouble in our community, in a sensitive issue such as this.

The Court:

Every defender. There must be an article of faith in your office to do this.

*Id.* at 9–10.

Following this colloquy and after further arguments from defense counsel, the prosecutor volunteered his reasons for using his preemptory challenges to exclude three out of four black venirepersons. According to the prosecutor, one of the venirepersons, named Idonia Young, was stricken because she had a son approximately the same age as Jones. The prosecutor explained: "it is my general policy that if at all possible, trying to avoid putting someone who has a child of approximately the same age [as the defendant] on the jury." *Id.* at 24. The second venireperson, named Karen Welton, was excluded because as the prosecutor stated:

> It's my recollection, my general policy, if it's a white defendant, a green defendant, a red defendant, black defendant, if there's a young potential juror as the same approximate age and *race* of the defendant, as a general rule, if I have enough strikes, I will keep them off the jury.... That's my policy ... to avoid any potential, any attraction, any given potential between the juror and the defendant. (emphasis added).

*Id.* at 24–25.

The third venireperson, named Roy Sidberry, was excluded because, according to the prosecutor, "I attempted to make eye contact with Mr. Sidberry, and [ ] he sat rigidly in his seat and refused to make eye contact with me, and that's why I struck him...." *Id.* at 25.

After the prosecutor completed his explanations for striking the black venirepersons, defense counsel responded: "This is too little too late.... My client is now being denied due process of law." *Id.* at 26. At that point, the court commented:

> Just a moment, please. These arguments—I'm sorry about this outburst, but they make me more and more upset all the time. These accusations, not only against—are against the District Attorney's office, and they spill over on the

Court, and I think it's outrageous, and I'm offended by it.

*Id.* On that note, the court, without making any findings concerning the *Batson* claim, denied Jones' post-verdict motions and proceeded to sentencing. On March 29, 1989, the court issued a written opinion affirming its decision to deny Jones' post-verdict motions. On the *Batson* claim, the court summarily concluded: "a fair and impartial jury was selected, [and] voir dire was conducted properly." *Commonwealth v. Jones*, No. 8808–2201/2202, slip op. at 2 (C.P.Phila. County Mar. 29, 1989).

Jones appealed to the Pennsylvania Superior Court, once again raising the *Batson* claim. In an unpublished opinion, the Superior Court affirmed the trial court. The court conceded that the trial court had "declined to make a determination that appellant established a *prima facie* case of purposeful discrimination." *Commonwealth v. Jones*, No. 8808–2201/2202 slip op. at 2 (Pa.Super.Ct. Oct. 16, 1989). Nonetheless, the court deferred to the trial court's implicit conclusions that the prosecutor's explanations were racially neutral. *Id.* The court further stated that, "there may have been other reasons, unannounced by the prosecution and apart from those offered against the black potential jurors, why the white venirepersons were more acceptable." *Id.* at 3. Following the Superior Court's affirmance of the trial court, Jones filed a "Petition For Allowance of Appeal" to the Supreme Court of Pennsylvania. On June 22, 1990, the Supreme Court denied the petition. *Commonwealth v. Jones*, 578 A.2d 412 (Pa.1990).

*Habeas Corpus Petition*

Having exhausted his state remedies as required by 28 U.S.C.A. § 2254(b), Jones filed a petition for a writ of habeas corpus in the federal district court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 2254(d). In his petition, Jones contended that he was denied equal protection of the law in violation of the Fourteenth Amendment by the prosecutor's racially discriminatory use of peremptory challenges to exclude black venirepersons during jury selection. The petition was

originally assigned to a magistrate judge. The magistrate found that Jones had established a *prima facie* case of racially discriminatory exercise of peremptory challenges. *Jones v. Ryan*, No. 91–0371 slip op. at 4 (E.D.Pa. Apr. 16, 1991). In addition, the magistrate found that the Commonwealth failed to articulate clear, specific, and nonpretextual explanations for striking the three black venirepersons and thus failed to rebut Jones' *prima facie* case. *Id.* at 5–6. The magistrate, therefore, recommended that Jones' petition for habeas corpus be granted. *Id.* at 10.

On August 15, 1991, the district court considered and declined to adopt the magistrate's recommendation. *Jones v. Ryan*, No. 91–0371 slip op. at 2, 1991 WL 161416 (E.D.Pa. Aug. 19, 1991). The court reasoned that the state trial court did rule that Jones had not made a *prima facie* case under *Batson*. *Id.* at 1. Moreover, the court continued, the prosecutor explained his reasons for striking three out of the four black venirepersons and the trial court found those reasons to be "adequate and nonpretextual." *Id.* The district court further reasoned that the state trial court, in arriving at its ruling, made credibility findings regarding the reasons proffered by the prosecutor. *Id.* These findings, according to the court, "are crucially important and . . . are entitled to deference." *Id.* at 2. Accordingly, the district court denied Jones' habeas corpus petition. Jones now appeals.

## II.

The district court had jurisdiction over Jones' petition pursuant to 28 U.S.C. § 2254. This court has jurisdiction to re-

view a final order denying a petition for a writ of habeas corpus pursuant to 28 U.S.C. §§ 1291 and 2253.

■ We must initially determine the proper standard of review in this appeal. A habeas petition based on the invocation of the *Batson* rule that racially discriminatory exercise of peremptory challenges by a prosecutor is a violation of the Equal Protection Clause involves mixed questions of law and fact. *See United States v. Luther*, 954 F.2d 910, 911 (3rd Cir.1992). On questions of fact, we review findings of the state courts and the district court for clear error. *Hernandez v. New York*, —— U.S. ——, 111 S.Ct. 1859, 1869, 114 L.Ed.2d 395 (1991); *Sumner v. Mata*, 449 U.S. 539, 546, 101 S.Ct. 764, 769, 66 L.Ed.2d 722 (1981); *Caswell v. Ryan*, 953 F.2d 853, 857 (3rd Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 2283, 119 L.Ed.2d 208 (1992). Specifically, we must accord the state courts' findings of fact a "presumption of correctness." *Hernandez*, —— U.S. at ——, 111 S.Ct. at 1869.[2] On questions of law, our review of the state courts' and district court's rulings is plenary. *Luther*, 954 F.2d at 911; *Dent v. Cunningham*, 786 F.2d 173, 175 (3d Cir.1986).

■ However, this appeal does not present the often difficult task of separating questions of fact from mixed questions of law and fact for purposes of the standard of review under § 2254(d). *Carter v. Rafferty*, 826 F.2d 1299, 1306 (3d Cir.1987) (citations omitted). Instead, in this appeal neither the trial record nor the "written opinion[s]" of the state trial or appellate courts provide a clear statement of the

2. Federal court review of habeas corpus petition is governed by 28 U.S.C. § 2254(d). Section 2254(d) provides in relevant part:

[A] determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction . . . [and] evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct, unless the applicant for a federal writ of habeas corpus shall establish or it shall otherwise appear, . . . [one of the enumerated causes for exception].

28 U.S.C. § 2254(d). The Supreme Court has interpreted § 2254(d) to mean that a federal court must afford findings of fact made by either a state trial court or a state appellate court a "presumption of correctness." *Hernandez v. New York*, —— U.S. ——, ——, 111 S.Ct. 1859, 1869, 114 L.Ed.2d 395 (1991). Moreover, as far as whether the findings of fact under review were made by a state trial court of a state appellate court, the court has held that § 2254(d) "makes no distinction between . . . a state trial court and a state appellate court." *Sumner v. Mata*, 449 U.S. 539, 546, 101 S.Ct. 764, 769, 66 L.Ed.2d 722 (1981).

factual findings necessary to support the courts' legal conclusions that Jones was not denied equal protection of the law. *See Wainwright v. Witt,* 469 U.S. 412, 430, 105 S.Ct. 844, 855, 83 L.Ed.2d 841 (1985). *Hernandez* and the decisions of this circuit instruct us that in reviewing the disposition of a habeas corpus petition: "[W]e must decide whether the record before the district court shows, on its face, that the state trial judge fairly and adequately considered the matter [and whether] the trial judge's finding ... is fairly supported by the record." *Riddick v. Edmiston,* 894 F.2d 586, 589 (3d Cir.1990). Here, the record before the district court does not show on its face that factual findings were made. Specifically, neither the trial court nor the state appellate court made a finding whether Jones established a *prima facie* case of racially discriminatory exercise of peremptory challenges by the prosecutor.[3] Additionally, the state courts failed to make any finding whether the prosecutor provided race-neutral explanations for eliminating three black venirepersons.[4] More importantly, the state trial court failed to make a finding concerning the "ultimate question [whether the prosecutor] intentional[ly] discriminat[ed]" against any one of the three black venirepersons whom he excluded in exercising peremptory challenges. *Hernandez,* —— U.S. at ——, 111 S.Ct. at 1866.

In short, there were no findings of fact made below to which this court must accord a presumption of correctness. The district court, notwithstanding the absence of findings of fact, adopted the state courts' legal conclusions. This court is therefore presented with legal conclusions which are matters of law and the proper scope of our review of the instant appeal is plenary. *Luther,* 954 F.2d at 911. *See also Sullivan v. Cuyler,* 723 F.2d 1077 (3rd

Cir.1984); *Universal Minerals, Inc. v. C.A. Hughes & Co.,* 669 F.2d 98 (3rd Cir.1981).

## III.

The major issue on appeal is whether Jones' right to equal protection as guaranteed under the Fourteenth Amendment was violated by the manner in which the prosecutor employed three of his seven available peremptory challenges. The prosecutor used three of the four challenges to exclude from the jury three of the four black venirepersons called for voir dire.

Nearly thirty years ago, the Supreme Court first addressed the issue of whether the equal protection clause was violated by a prosecutor's racially motivated exercise of peremptory challenges. *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). In *Swain,* the Court noted that the preemptory challenge has old common law credentials. *Id.* 380 U.S. at 212, 85 S.Ct. at 831. According to the court, because of the common law roots of the preemptory challenge it came to be viewed as a "necessary part of a trial by jury," and "one of the most important rights secured to the accused." *Id.* at 219, 85 S.Ct. at 835. As such, most every states enacted statutes to allow counsel to exclude prospective jurors "without a reason stated, without inquiry and without being subject to the court's control." *Id.* at 220, 85 S.Ct. at 836.

Yet, as the Supreme Court recognized in *Swain,* the unfettered use of preemptory challenges bears a heavy cost. Specifically, preemptory challenges, in the words of the court have been "exercised on grounds normally thought irrelevant to legal proceedings ... namely, the race, religion, nationality, occupation, or affiliations of people summoned for jury duty." *Id.* at 220,

---

3. The state appellate court noted that "the trial court declined to make a determination that appellant established a *prima facie* case of purposeful discrimination." *Commonwealth v. Jones,* No. 8808–2201/2202 slip op. at 2 (Pa.Super.Ct. Oct. 16, 1989) [395 Pa.Super. 653, 570 A.2d 588 (Table)]. The converse is also apparent from the trial record and opinion; the trial court failed to find that the appellant did not establish a *prima facie* case under *Batson.*

4. We recognize that a trial judge is not required to prepare in a separate memorandum his specific findings on each challenged juror if the findings are evident from the trial record and the court has no reason to elaborate. 28 U.S.C.A. §§ 2254(d) and (d)(8); *see Wainwright v. Witt,* 469 U.S. 412, 430, 105 S.Ct. 844, 855, 83 L.Ed.2d 841 (1985).

85 S.Ct. at 836. Accordingly, in order to mitigate the costs of unfettered use of preemptory challenges, the Court in *Swain* held that a violation of equal protection could be established by "proof [that] support[s] a reasonable inference that Negroes are excluded from juries for reasons wholly unrelated to the outcome of the particular case on trial and that the peremptory system is being used to deny the Negro the same right and opportunity to participate in the administration of justice enjoyed by the white population." *Id.* at 224, 85 S.Ct. at 838.

However, the evidentiary standard announced in *Swain* posed a formidable burden to the defendant. Under *Swain*, in order to establish a *prima facie* case of a violation of the Equal Protection Clause by a prosecutor's exercise of peremptory challenges, a defendant would need to show an inference of purposeful discrimination. *Id.* at 223, 85 S.Ct. at 837. In order to establish the inference, the defendant was required to show that the prosecutor "in case after case, whatever the circumstances, whatever the crime and whoever the defendant or the victim [ ], [was] responsible for the removal of Negroes who [had] been selected as qualified jurors by the jury commissioners and who have survived challenges for cause, with the result that no Negroes ever serve[d] on petit juries." *Id.*

In the watershed case *Batson v. Kentucky,* the Court expressly rejected the evidentiary formulation suggested by the *Swain* decision. *Batson,* 476 U.S. at 93, 106 S.Ct. at 1721. The *Batson* Court ruled that a criminal defendant was no longer required to prove "repeated striking of blacks over a number of cases" in order to establish a violation of the Equal Protection Clause. *Id.* at 92–93, 106 S.Ct. at 1720–21. Instead, the court held that the Equal Protection Clause forbids a prosecutor from challenging potential jurors on the basis of their race or on the assumption that black jurors as a group will be unable to be impartial in considering the State's case against a black defendant. *Id.* at 89, 106, 106 S.Ct. at 1719, 1728. The court then set forth a three part test for evaluating claims that a prosecutor used peremp-

tory challenges in violation of the Equal Protection Clause. *Id.* at 96–98, 106 S.Ct. at 1722–24. First, the defendant has the initial burden of establishing a *prima facie* case that the prosecution purposefully exercised peremptory challenges in a racially discriminatory manner. *Id.* at 96–97, 106 S.Ct. at 1722–23. Second, if a *prima facie* case is established, the burden shifts to the prosecutor to provide race-neutral explanations for striking specific jurors. *Id.* at 97–98, 106 S.Ct. at 1723–24. Third, in light of the prosecutor's explanations, the trial court must determine whether the defendant established a showing of purposeful discrimination. *Id.* at 98, 106 S.Ct. at 1724. *Batson,* at first glance, would seem to have done no more than reiterate a principle announced by the Supreme Court in *Strauder v. West Virginia,* twelve years after the ratification of the Fourteenth Amendment. In *Strauder,* the Court explained that the State denies a black defendant equal protection of the laws when it puts him on trial before a jury from which members of his race have been purposefully excluded. *Strauder v. West Virginia,* 100 U.S. 303, 25 L.Ed. 664 (1880). But a deeper reading—and truer understanding—of *Batson* and its progeny reveals that the Supreme Court recognized that the harm caused by racially pernicious discrimination is not limited to the denial of a fair trial to the defendant. The excluded juror also is harmed and the integrity of the judicial process is tainted. *Batson,* 476 U.S. at 87, 106 S.Ct. at 1718. For example, within the last year the Court has emphasized a central feature of the socio-historical underpinnings of equal protection jurisprudence and the harm inflicted by invidious reliance on race. In the words of the court:

The very fact that [members of a particular race] are singled out and expressly denied ... all right to participate in the administration of the law, as jurors, because of their color, though they are citizens, and may be in other respects fully qualified, is practically a brand upon them, affixed by the law, an assertion of their inferiority, and a stimulant to that race prejudice which is an impedi-

ment to securing to individuals of the race that equal justice which the law aims to secure to all others.

*Powers v. Ohio*, —— U.S. ——, ——, 111 S.Ct. 1364, 1369, 113 L.Ed.2d 411 (1991) (*quoting Strauder v. West Virginia*, 100 U.S. 303, 308).

Still more recently—and perhaps more trenchantly—in *Georgia v. McCollum* the Court recognized as a matter of course "that a defendant has the right to an impartial jury that can view him without racial animus." —— U.S. ——, ——, 112 S.Ct. 2348, 2358, 120 L.Ed.2d 33 (1992). The Court ruled that the *Batson* mandate precluded a criminal defendant from the racially discriminatory use of peremptory challenges to exclude venirepersons of the same race as the alleged victim. *Id.* at ——, 112 S.Ct. at 2359. In *McCollum*, the defendants were white and the victims were black. The Court "rejected the view that assumptions of partiality based on race provide a legitimate basis for disqualifying a person as an impartial juror," and again "reaffirm[ed] that the exercise of a peremptory challenge must not be based on either the race of the juror or the racial stereotypes held by the party." *Id.*

Thus, if tension exists between the "old tradition" of unconsidered preference for unfettered use of peremptory challenges and the still relatively "young tradition" of meaningful safeguards against invidious application of racial stereotypes, then the latter consideration must prevail. If the former consideration still prevailed, the "price" would be the jeopardizing of the integrity of the judicial process and the stigmatization of venirepersons of color. And such a price would be "too high." *Id.* at ——, 112 S.Ct. at 2358 (*citing Edmonson v. Leesville Concrete Co., Inc.*, —— U.S. ——, ——, 111 S.Ct. 2077, 2088, 114 L.Ed.2d 660 (1991)). Indeed, the Supreme Court has recognized the role and value of the *Batson* rule in eliminating racial stereotyping, preserving the integrity of the judicial process, protecting the right of a defendant to a fair trial, and affirming the right of venirepersons not to be excluded from serving on a jury because of their race. *Powers*, —— U.S. at ——, 111 S.Ct. at

1370; *See also Government of Virgin Islands v. Forte*, 865 F.2d 59 (3d Cir.1989). Affirming the right of venirepersons not to be excluded because of their race means that "[a]n individual juror does not have a right to sit on any particular petit jury, but he or she does possess the right not to be excluded from one on account of race." *Powers*, —— U.S. at ——, 111 S.Ct. at 1370.

Of course, history has taught us that blacks and other minorities are the usual victims of the stigmatization that accompanies being excluded in open court on the assumption that their race makes them uniquely incapable of being fair and impartial. *See supra Strauder; Batson; Hernandez.* However, we understand that *Batson* does not protect exclusively blacks and other minorities. For example, because blacks are the overwhelming majority of the residents of the Virgin Islands, our circuit was presented with a nontypical appeal in *Forte.* The basis of the appeal in *Forte* involved a different type of *Batson* claim. In *Forte*, the defendant, a white man, was convicted of aggravated rape, unlawful sexual contact, and the possession of a dangerous weapon during the commission of those crimes. The victim was a black woman. The defendant, invoking the *Batson* rule, contended that the prosecutor sought to exclude from the jury members of the defendant's race, i.e., white venirepersons, in violation of the defendant's right to equal protection. We noted that whites outnumber blacks in most areas of the federal judiciary's jurisdiction and blacks are usually victimized. *Forte*, 865 F.2d at 64. We explained, however, that race-based use of peremptory challenges is impermissible whatever form it takes. Accordingly, we concluded: "We will not read *Batson* to make a distinction between white and black defendants. Defendants of both groups are entitled to trial before juries from which members of their race are not excluded as the result of purposeful discrimination by the prosecutor". *Id.*

## IV.

With that general background in mind, we now turn to the specific requirements

of *Batson* and their applications in this case. To recapitulate, the relevant standards for assessing whether a defendant has made a showing of the elements of a *prima facie* case in the context of discriminatory selection of the venire have been discussed since *Swain*, 380 U.S. at 223–24, 85 S.Ct. at 837–38. The crippling burden of proof imposed on the defendant by *Swain* convinced the *Batson* Court to alter the defendant's burden. The defendant is now required to prove only that discrimination occurred in the selection of his jury and does not have the burden of proving systematic discrimination. *Batson*, 476 U.S. at 92–93, 106 S.Ct. at 1720–21. Under *Batson*, to establish a case of purposeful discrimination the defendant must show the following:

> [F]irst that he is a member of a cognizable racial group, *Castaneda v. Partida*, [430 U.S. 482, 494, 97 S.Ct. 1272, 1280, 51 L.Ed.2d 498 (1977)] and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits "those to discriminate who are of a mind to discriminate." [*Avery v. Georgia*, 345 U.S. 559, 562, 73 S.Ct. 891, 892, 97 L.Ed. 1244 (1953)]. Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race. This combination of factors *in the empaneling of the petit jury, as in the selection of the venire*, raises the necessary inference of purposeful discrimination.

*Id.*, 476 U.S. at 96, 106 S.Ct. at 1723. (emphasis added)

Recently, in *Powers v. Ohio*, the Supreme Court ruled that the defendant and the challenged juror need not be of the same race for the defendant to establish an equal protection violation. *Powers*, — U.S. at —, 111 S.Ct. at 1373. In expanding *Batson*, the Court stated:

> The emphasis in *Batson* on racial identity between the defendant and the excused prospective juror is not inconsistent with our holding today that race is irrelevant to a defendant's standing to object to the discriminatory use of peremptory challenges. Racial identity between the defendant and the excused person might in some cases be the explanation for the prosecution's adoption of the forbidden stereotype, and if the alleged race bias takes this form, it may provide one of the easier cases to establish both a prima facie case and a conclusive showing that wrongful discrimination has occurred.

*Id.* at —, 111 S.Ct. at 1373–74.

### A.

In the instant case, as an initial matter, we do not construe the trial court's response to the *Batson* objection raised during voir dire as finding that Jones had not satisfied his burden pursuant to *Batson* to establish a *prima facie* case of purposeful discriminatory exercise of peremptory challenges by the prosecutor. The statements of the trial judge do not show with any acceptable degree of clarity that he made a finding that the defendant failed to make a *prima facie* showing under *Batson*.

Moreover, and more importantly, we believe that the record establishes as a matter of law a *prima facie* case of purposeful racially discriminatory use of peremptory challenges by the prosecutor. The comments of the trial court during voir dire examination indicate that the trial court considered defense counsel's objection, although specifically stated as on the ground of *Batson*, in a *Swain* test context. Defense counsel invoked the *Batson* rule by stating: "Under the doctrine of *Batson versus United States.*" App. at 41. The trial court's response to the invocation of the *Batson* rule was "Did you look at this panel *when it came in.* I think about thirty-two were white and about eight were black." *Id.* at 42 (emphasis added). The court followed this observation with the statement that "They [the prosecution] don't have to give an explanation unless he [sic] wants to. I am not asking for an

explanation. It is *a random thing* that we did here, that we did today." *Id.* (emphasis added).

■ The composition and "random" manner of selecting a venire panel are immaterial to a *Batson* inquiry. These factors were, however, recognized in *Swain* as critical to a claim of systematic racial discrimination in violation of the Equal Protection Clause. In *Swain*, the Court ruled that "[t]otal exclusion of Negroes by the state officers responsible for selecting names of jurors gives rise to a fair inference of discrimination on their part, an inference which is determinative absent sufficient rebuttal evidence." *Swain*, 380 U.S. at 227, 85 S.Ct. at 839. The trial court's comment that "they don't have to give an explanation unless he wants to" would have been correct if the rule announced in *Swain* had not been rejected in *Batson*. In *Swain*, the Court stated that "this rule of proof cannot be … applied to cases where the discrimination is said to occur during the process of peremptory challenges of persons called for jury service. The defendant must … show the prosecutor's systematic use of peremptory challenges against Negroes…." *Id.* Moreover, according to *Swain*, in order to make the required showing of purposeful discrimination by the prosecutor, the defendant must establish that the prosecutor's "systematic use of peremptory challenges against Negroes over a period of time … [were] exercised to prevent any and all Negroes on petit jury venires from serving on the petit jury itself." *Id.* at 223, 85 S.Ct. at 837.

The trial judge's statements do not indicate that a finding was made in the context of a *Batson* inquiry. Rather, the comments clearly suggest that the trial court entertained the objection of defense counsel as a charge of systematic racial discrimination. Moreover, while the prosecutor's understanding of defense counsel's objection cannot be imputed to the trial court, the trial court failed to advise or note that the prosecutor's explanation was pointless under the controlling law. The prosecutor explained:

If it was my *intention to systematically exclude* people on the basis of race from this jury, I certainly had every opportunity to do that. I chose not to. I chose to put him on the jury. I would suggest to the Court, in light of the fact that there were only four people who were black who were put on the panel and questioned during voir dire, there is no systematic exclusion here.

App. at 42–43. (emphasis added). The trial court's response to this explanation was: "Very well." The import of the colloquy, in light of the absence of discussion concerning the peremptory challenges themselves, is that the trial court implicitly ruled that the defendant failed to carry the "crippling burden of proof" imposed by the *Swain* decision which *Batson* overruled. In other words, the trial court failed to make a finding on the determination whether Jones established a *prima facie* case, under *Batson*, of purposeful discriminatory use of peremptory challenges by the prosecutor. The trial court ostensibly committed a legal error of the selection and application of an invalid constitutional standard. *Rogers v. Richmond*, 365 U.S. 534, 543, 81 S.Ct. 735, 741, 5 L.Ed.2d 760 (1961) (trial court committed legal error by relying on impermissible legal standard evidenced by the court's reference to language which was part of an invalid test); *Sullivan v. Cuyler*, 723 F.2d at 1084 (where state court hearing was conducted under a misapprehension of controlling legal precepts therefore the factfinding which occurred was insufficient to resolve the question presented).

■ In *United States v. Clemons*, 843 F.2d 741, 747 (3d Cir.), *cert. denied*, 488 U.S. 835, 109 S.Ct. 97, 102 L.Ed.2d 73 (1988), this circuit delineated five factors that the trial court should employ to assess whether a defendant has established a *prima facie* case. These factors include: how many members of the "cognizable racial group" (in Jones' case this would apply to blacks) are in the venire panel; the nature of the crime; the race of the defendant and victim; a pattern of strikes against black [or other cognizable racial group] jurors in a particular venire; and a prosecutor's

questions and statements during the selection process. *Clemons,* 843 F.2d at 748.

First, in applying the *Clemons* factors, we note that Jones is a black man and thus a member of a cognizable racial group. Moreover, the trial court prior to voir dire of individual members of the venire panel acknowledged the racial identities of the defendant and alleged victim.[5] Additionally, the court noted that the substantive charges against Jones involved physical violence or the threat of physical violence, i.e., a robbery of an elderly white man by a black man.[6] Further, the court noted during the colloquy that transpired concerning the *Batson* objection that the composition of the venire panel as "about thirty-two were white and about eight were black." App. at 42. Finally, the prosecutor's statements outside the context of the *Batson* discussion were limited to the identification of the exact age of the victim, the nature of the allegations, and the identities and occupations of the witnesses. App. at 8–9.

Notwithstanding the response of the entire venire panel that they harbored no biases that would impair their ability to serve as fair and impartial jurors, the pattern of peremptory challenges exercised by the prosecutor shows the elimination from the jury all but one of the venirepersons who were members of Jones' racial group. The prosecutor exercised four of seven available peremptory challenges. Three of these four were used to exclude three of the four black venirepersons called for voir dire. The *Batson* opinion cites *Castaneda v. Partida,* 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977), and thus indicates that statistical disparities are to be examined in determining whether a *prima facie* case has been established. *Batson,* 476 U.S. at 95, 106 S.Ct. at 1722. In the instant case the venire panel consisted of forty persons, eight of whom were black. The minority percentage of the venire was thus twenty percent. The state excluded outright three of the four blacks called from the venire panel and accepted the fourth black two rounds subsequent to the round in which the voir dire of this venireman occurred. The prosecutor used three of four of the state's exercised peremptory challenges against black venirepersons called for voir dire. Moreover, the prosecutor's rate of excluding black venirepersons through challenges was seventy-five percent, nearly four times the minority percentage of the venire.

■ Additionally, as stated in the *Batson* opinion, Jones is entitled to rely on the fact that peremptory challenges constitute a jury selection process that permits persons who are predisposed to discriminate to exercise those challenges in a discriminatory fashion. Jones raised the inference that the prosecutor used his peremptory challenges to exclude certain venirepersons on account of their race. This inference is supported by the fact that the prosecutor exercised three of four peremptory challenges to exclude black persons and the resulting jury was comprised of one black person and eleven white persons. Although one black person was ultimately empaneled, the "mere presence of a single black on the jury would not necessarily prevent a finding of a *prima facie* case." *Clemons,* 843 F.2d at 747; *see also Ford v. Georgia,* 498 U.S. 411, 111 S.Ct. 850, 112 L.Ed.2d 935 (1991)[7]; *Commonwealth v. Dinwiddie,* 529 Pa. 66, 601 A.2d 1216

5. The court noted that the respective races of the defendant and victim could impact the judgment of the jurors and therefore inquired whether any of the forty venirepersons thought that this fact would prevent them from acting as fair and impartial jurors. No venireperson responded affirmatively.

    The Court: You will note that the defendant is black, while the complainant is white, that is the man who was robbed. Would this tend to prejudice you against the complainant or the defendant in this case or make it difficult for you to render a fair and impartial verdict based solely on the evidence and the law?
    The Crier: No response, Your Honor.
App. at 21.

6. *Id.* The prosecutor identified the victim as a "sixty-nine year old gentleman." App. at 8.

7. In *Ford,* the prosecutor exercised nine of his ten available peremptory challenges to exclude black persons from the jury, leaving one black juror on the panel. 498 U.S. at ——, 111 S.Ct. at 853.

(1992).[8] Moreover, the Supreme Court noted in *Powers*, that "[r]acial identity between the defendant and the excused person might in some cases be the explanation for the prosecution's adoption of the forbidden stereotype, and if the alleged race bias takes this form, it may provide one of the easier cases to establish both a *prima facie* case and a conclusive showing that wrongful discrimination has occurred." *Powers*, — U.S. at —, 111 S.Ct. at 1373.

This court ruled in *Forte* that a violation of the *Batson* rule occurs when race is used as a factor in the exercise of a peremptory challenge. *Forte*, 865 F.2d at 64. The prosecutor's use of peremptory challenges here is remarkably similar to the manner in which the prosecutor in *Forte* utilized peremptory challenges. Both prosecutors "used peremptory challenges to excuse all or almost all of the [blacks in Jones' case and whites in *Forte*] jurors called." 865 F.2d at 61. In this circuit, it is well settled that there is no distinction between white and black defendants; both "are entitled to trial before juries from which members of their race not excluded as the result of purposeful discrimination by the prosecutor." *Id.* at 64. The legally operative facts in *Forte* and the instant appeal are virtually indistinguishable. In both cases the defendant and victim were members of different racial groups and the prosecuting attorneys sought to exclude venirepersons having the same racial identity as the defendant. Notwithstanding the prosecutor's assertion here that the race-based general policy is administered even-handedly, the Supreme Court in *Batson* and its progeny has expanded and repeatedly reaffirmed the principle that the exclusion of even a single venireperson on the basis of race is a violation of the Equal Protection Clause. *Batson*, 476 U.S. at 89, 106 S.Ct. at 1719. This circuit has also held that the exclusion of even one juror on the basis of race may be sufficient to establish a *prima facie* case. *Clemons*, 843

F.2d at 747 (citations omitted). Our review of the record compels this court to rule that Jones established a *prima facie* case of purposeful racial discrimination in the selection of his jury.

### B.

◼ We now move to the issue of whether the prosecutor satisfied his burden of providing a neutral, nonpretextual explanation for striking the black venirepersons from the venire panel. This court has stated that "[o]nce a defendant establishes a *prima facie* case, the prosecutor must then give a neutral, nonpretextual explanation for challenging members of that racial group ... [t]he prosecutor must assert a clear specific reason beyond 'his intuitive judgment' or 'his good faith.'" *Clemons*, 843 F.2d at 745 (citations omitted). Because Jones established a *prima facie* case of purposeful discrimination as a matter of law, the burden shifted to the prosecutor "to come forward with a neutral explanation for challenging black jurors." *Batson*, 476 U.S. at 97, 106 S.Ct. at 1723. The prosecutor has the burden of providing "a 'clear and reasonably specific' explanation of his 'legitimate reasons' for exercising the challenges." *Harrison v. Ryan*, 909 F.2d 84, 88 (3d Cir.1990), (*citing Batson*, 476 U.S. at 98, n. 20, 106 S.Ct. at 1724, n. 20). Here, the prosecutor proffered his explanations for striking the black venirepersons in two proceedings: during voir dire and during Jones' sentencing hearing. We examine each of these proceedings separately.

◼ First, the prosecutor argued during voir dire that he did not discriminate because he had a sufficient number of remaining peremptory challenges to exclude Sharp (juror number 252)[9] and the blacks not called for voir dire. This argument is a *non sequitur* and unavailing. In essence, the Commonwealth's argument is that since the prosecutor had a sufficient num-

---

**8.** In *Dinwiddie*, the assistant district attorney used six of seven available peremptory challenges; five of these six were used against black venirepersons which resulted in a jury composed of ten whites and two blacks; the state

used another challenge to eliminate a black as the first alternate. 601 A.2d 1216, 1216–1217.

**9.** *See supra* note 1.

ber of challenges available to exclude all black venirepersons and because he did not eliminate all black venirepersons he, therefore, did not exercise his peremptory challenges in a discriminatory manner against any black venireperson. This court has previously discounted the marginal impact this same argument has on determining whether a prosecutor exercised peremptory challenges in a racially discriminatory manner. In noting the shortcomings of the logic of this type of argument we stated: "[W]e doubt the significance of including a single black on a panel if, at the same time, the government used most of its peremptory challenges to strike blacks with backgrounds similar to the white jurors ultimately selected." *Clemons,* 843 F.2d at 747.

Next, at Jones' sentencing and post-verdict motions hearing of March 2, 1989,[10] the prosecutor presented his explanations for striking the three black venirepersons as follows:

> [I]n reference to Idonia Young, juror number 299, I wrote at the time that at the time her son was twenty years of age, and it is my general policy that if at all possible, trying to avoid putting someone that has a child of approximately the same age on the jury. That was my reason that I recall for striking her.

> Regarding Karen Welton, W-e-l-t-o-n, number 285, she was from North Philadelphia, a check processor, and single. It is my recollection, my general policy, if it's a white defendant, a green defendant, a red defendant, black defendant, if there's a young potential juror as the same approximate age and race of the defendant, as a general rule, if I have enough strikes, I will keep them off the

> jury.... That's my policy ... to avoid any potential, any attraction, any given potential between the juror and the defendant.

> [R]egarding the last of those people who are alleged to have been stricken in a discriminatory manner. Roy Sidberry, S-i-d-b-e-r-r-y. I wrote at the time that my feeling was that I attempted to make eye contact with Mr. Sidberry, and that he sat rigidly in his seat and refused to make eye contact with me, and that's why I struck him, at the time.

Supp.App. at 23–25.

◾ The prosecutor's explanation that his general policy of excluding jurors whose children were the same approximate age of the defendant was the reason for challenging Ms. Young does not satisfy the concerns of *Batson.* The record reveals that the prosecutor did not apply this general policy to two white venirepersons who possessed the identical characteristic of having children who were in the same age category as the defendant. Mr. Kolodziej had a nineteen year old son and two twenty year old daughters, nevertheless he was empaneled as a juror. App. at 34–35. Ms. Eisler had two sons, age twenty and a twenty-two, and she also served as a juror. *Id.* at 37. The presence of white jurors who possessed the same characteristic indicates that this explanation was pretextual.

◾ The prosecutor's reason for striking Ms. Welton was based on her race as it was specifically referenced in his explanation. The prosecutor stated "if there's a young potential juror as the same approximate age *and* race of the defendant, as a general rule, if I have enough strikes, I will keep them off the jury." Supp.App. at 24

---

**10.** The trial court's inquiry of defense counsel during the post verdict motions hearing leads to the conclusion that, notwithstanding defense counsel providing the court with the *Dinwiddie* opinion, the trial court continued to misapprehend the controlling legal standard. Supp. App. at 4. Defense counsel noted that he "present[ed] the case of Commonwealth versus Grover Dinwittie [sic] to the Court." *Id.* The evidence of the state court's continued misapprehension is encapsuled in the court's query to

defense counsel. The court stated: "Let me ask you does the Commonwealth have a right to demand of the defendant why he struck a particular person?" *Id.* Defense counsel responded by stating that he did not know but he had provided the court with *Dinwiddie* which was a Pennsylvania case on point. Further, counsel noted that he had "even cited *Batson versus Kentucky,* which is the controlling case." *Id.* at 4–5.

(emphasis added).[11] "The Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race ...." *Batson,* 476 U.S. at 89, 106 S.Ct. at 1719.

The prosecutor's alleged general policy designed to eliminate even the potentiality of attraction between a juror and a defendant of the same age did not apply to several single white women who were empaneled as jurors, nor did it extend to one white woman who served as an alternate juror. Ms. Rajauski, an unmarried white woman from South Philadelphia, Ms. Aquilino, an unmarried white woman from Mayfair, and Ms. Arena, an unmarried white woman from Northeast Philadelphia were empaneled. App. at 31, 37. Ms. Kovach, an unmarried white woman from Manayunk, sat as an alternate juror. *Id.* at 39. Although the prosecutor tried to disclaim his statement that race was a factor in this particular peremptory policy, his explanation and application included race as a factor. The prosecutor limited the application of his general rule to a black woman. The prosecutor did not exclude single white women from serving as jurors or alternates. Similarly situated white women apparently were not within the scope of the prosecutor's potential attraction theory. Race was identified as a basis to strike a black venireperson. That discriminatory intent was inherent in the explanation given by the prosecutor. The Supreme Court has stated that a neutral explanation "means an explanation based on something other than the race of the juror." *Hernandez,* —— U.S. at ——, 111 S.Ct. at 1866. No such explanation was given here.[12]

■ The prosecutor attempted to provide policy reasons as explanations for striking Ms. Young and Ms. Welton. However, general policy explanations, proffered in "good faith," may nonetheless stand in violation of the law presented in *Batson.*

The *Batson* Court set forth the requirement that the prosecutor "must articulate a neutral explanation related to the particular case to be tried." 476 U.S. at 98, 106 S.Ct. at 1724. As the Court noted in *Hernandez,* general policy reasons may be found to be pretextual where the venirepersons are challenged "without regard to the particular circumstances of the trial or individual responses of the jurors." —— U.S. at ——, 111 S.Ct. at 1873. The prosecutor's stated policy reasons did not meet the burden imposed by *Batson* because they are not related in any real sense to the particular events which transpired during the voir dire proceedings in this case. If, as the prosecutor claimed, venirepersons who were parents of children of the same approximate age as Jones were unable to serve as impartial jurors, then the prosecutor should have challenged the two white jurors who possessed the same disability as Ms. Young. The record also indicates that the policy used to eliminate Ms. Welton was discarded where the venirepersons were white women like Ms. Welton, single again like Ms. Welton, but white unlike Ms. Welton.

Finally, the prosecutor used a peremptory challenge to exclude Mr. Sidberry because of essentially an intuitive feeling drawn from the venireman's posture and lack of receptivity, i.e., "he sat rigidly in his seat and refused to make eye contact with me." Supp.App. at 25. The Magistrate Judge found that this explanation did not constitute a clear, specific, nonpretextual reason for removing Mr. Sidberry. In view, however, of this court's determination concerning the impermissible exclusion of Ms. Young and Ms. Welton, we need not decide whether race was a factor in the exclusion of Mr. Sidberry.

■ In sum, we find that the explanations proffered by the prosecutor were not

---

11. The record contains information regarding Ms. Welton's occupation, marital status, and the area of Philadelphia in which she resides. There is no mention of her age by counsel or the court other than the assistant district attorney's characterizing Ms. Welton as "young".

12. Admittedly, the trial record does not identify the ages of the single white women, but *Batson* and its progeny does not require such specificity. In any case, the prosecutor was certainly not precluded from stating for the record any significant disparity between the ages of the white and black women in the venire.

"neutral explanation[s] related to the particular case to be tried." *Batson,* 476 U.S. at 98, 106 S.Ct. at 1724. Recitation of general policies is inadequate to satisfy the requirement that the explanations be fact specific and indicates that they are pretextual. We therefore find that the prosecutor failed to meet the burden imposed by *Batson* of articulating "a 'clear and reasonably specific' explanation of his 'legitimate reasons' for exercising the challenges." *Batson,* 476 U.S. at 98, n. 20, 106 S.Ct. at 1724, n. 20 (*quoting Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 258, 101 S.Ct. 1089, 1096, 67 L.Ed.2d 207 (1981)).

## V.

In conclusion, we hold that the trial court erred in failing to make an express or implied finding as to whether Jones had established a *prima facie* case of intentional race-based discriminatory use of preemptory challenges by the prosecutor. In the absence of such findings, we hold that Jones established a *prima facie* case of purposeful discrimination as a matter of law. We also hold that on the record before us the explanations tendered by the prosecutor for excluding the black venirepersons were pretextual reasons for challenges on the basis of race. Accordingly, we hold that during voir dire peremptory challenges were used to exclude black venirepersons on the grounds of race in violation of Jones' rights to equal protection. We, therefore, hold that the district court erred in not granting Jones' writ of habeas corpus.

For the foregoing reasons, we will reverse the order of the district court denying Jones' petition for a writ of habeas corpus, and we will remand for the district court to grant the writ without prejudice to the Commonwealth retrying the case pursuant to the guidelines to be set by the district court.