601 A.2d 1216

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Grover DINWIDDIE, Appellee.**

Supreme Court of Pennsylvania.

Argued April 2, 1990.

Decided Jan. 8, 1992.

Gaele McLaughlin Barthold, Deputy Dist. Atty., Ronald Eisenberg, Chief, Appeals Div. and Donna G. Zucker, Asst. Dist. Atty., for appellant.

Lewis S. Small and Kenneth L. Mirsky, Philadelphia, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION ANNOUNCING THE JUDGMENT OF THE COURT

NIX, Chief Judge.

This is the appeal of the Commonwealth of Pennsylvania from the order of the Superior Court vacating the judgment of sentence imposed on Grover Dinwiddie (Appellee) by the Court of Common Pleas of Philadelphia County and remanding the matter to that court for a new trial. 373 Pa.Super. 596, 542 A.2d 102. The issue raised by this appeal is whether Appellee established a *prima facie* case that the prosecutor was using his peremptory challenges to eliminate blacks from the venire panel in violation of the Equal Protection Clause of the Constitution.

Appellee was tried on charges of robbery,[1] criminal conspiracy,[2] possession of instruments of crime,[3] bribery,[4] and obstruction of the administration of justice.[5] Prior to the commencement of trial, the court conducted a *voir dire* proceeding in order to empanel a jury. Each member of the venire panel was questioned concerning his or her occupation, residence, and family status. Upon the conclusion of

1. 18 Pa.C.S. § 3701.
2. 18 Pa.C.S. § 903.
3. 18 Pa.C.S. § 4701.
4. 18 Pa.C.S. § 907.
5. 18 Pa.C.S. § 5101.

this questioning, Appellee and the Commonwealth began to exercise their seven (7) peremptory challenges. At the termination of this process the Commonwealth, in the exercise of six (6) of its peremptory challenges had stricken five (5) blacks from the jury. After the first two blacks were stricken, defense counsel objected, arguing that the prosecutor was using its challenges to purposely discriminate against blacks [6] in direct contravention of the United States Supreme Court's ruling in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).[7]

6. The following exchanges occurred between the court, defense counsel, and the prosecutor:

> MR. LIPSHUTZ [Defense Counsel]: Your Honor ... a short time ago a United States Supreme Court decision came down which stated that the prosecutor cannot use his or her peremptory challenges against members of the black race ...
> THE COURT: ... I am aware of that case. ... [A]t the conclusion of the jury selection, if a challenge like this comes up, the district attorney will say on the record why he challenged the particular person.
> MR. GOTTLIEB [District Attorney]: Your Honor, my reading of *Batson versus Kentucky* leads me to the conclusion ... that the Commonwealth need not provide an explanation for why it chose to exercise peremptories against my prospective juror until the Court is satisfied that there is a prima facie showing of systematic exclusion of blacks from the respective jury—from the jury.... Therefore, at this stage of the game, where I have only exercised two peremptories and these two peremptories have been against members of the black race, I would suggest to the Court that ... there has not been a prima facie showing which would necessitate ... the Commonwealth providing any answer at all, because there is simply not a prima facie showing of systematic exclusion.
> ... I take exception to the Court's suggested procedure that the Commonwealth provide an explanation. It is my understanding and I think the case is quite clear, that first there must be prima facie showing to the satisfaction of the Court that there is, in fact, systematic exclusion before any explanation is required.
> MR. LIPSHUTZ: Based upon that, Your Honor, I will merely make my notations on the record. Do I understand that if I have a further challenged [sic], I shall make it at the conclusion of the jury selection?
> THE COURT: Fine.
> (N.T., June 23, 1986, p. 30–35.)

7. While a defendant may challenge the use of peremptory challenges which intentionally seek to remove potential jurors on account of their race, a defendant is not, under the Constitution, entitled to a jury

At the conclusion of the *voir dire* process, defense counsel, as instructed by the court, again objected, noting that a total of five (5) blacks had been stricken resulting in a jury comprised of ten (10) white and two (2) black jurors.[8]   The prosecutor also used another peremptory challenge to eliminate a black as the first alternate, resulting in the alternates consisting of one white woman and one black male. In response to each of the two objections raised by defense counsel, the prosecutor, as evidenced by the record, responded that under *Batson v. Kentucky* he was not obligated to justify the use of his peremptory challenges, as the defense allegedly failed to establish a *prima facie* showing of systematic exclusion of blacks.

Upon denying Appellee's motion to have the jury stricken, the trial court noted the final count of the jury for the record as being composed of "one Spanish male, one Puerto Rican,[9] four white women, two black women and five white males.   The alternates, one white woman and one black male."   (N.T., June 23, 1986, page 46.)

Appellee proceeded to trial, following which the jury found him guilty of all of the aforementioned crimes.   Appellee preserved the issue of the prosecutor's use of his

comprised totally or in part by members of his or her race.   See, *Taylor v. Louisiana,* 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975).

**8.** The record reveals that the following exchange occurred when Appellee renewed his objections noting that the prosecutor had challenged a total of six (6) members of the venire, five (5) of whom were black:

MR. LIPSHUTZ: So it is my count that the jury consists of ten white and two black people.   The alternates consist of one white and one black.   Therefore, because of the use of the peremptory challenges, I would suggest that more than a prima facie showing of racial prejudice would be shown.   I think it is proof beyond any doubt.   I would ask the Judge to strike the Jury.

MR. GOTTLIEB: I do not object to counsel raising the issue.   But I object to the last statement, it is proof beyond any doubt that I excluded blacks ...

MR. LIPSHUTZ: I am suggesting that the evidence shows that.

THE COURT: I am denying your motion.

(N.T., June 23, 1986, p. 45.)

**9.** We assume that "one Spanish male" and "one Puerto Rican" refer to the same individual.

peremptory challenges in post-verdict motions which were denied, and Appellee was sentenced.

On appeal to the Superior Court, Appellee renewed his objections along with two other properly preserved allegations of error. The Superior Court failed to consider these two allegations of error because it agreed with Appellee that he had made a *prima facie* showing that the prosecutor's use of his challenges raised an inference that they were racially motivated, and that because the prosecutor refused to provide a racially neutral answer to rebut this inference, the conviction had to be reversed and a new trial granted. *Commonwealth v. Dinwiddie*, 373 Pa.Superior Ct. 596, 542 A.2d 102 (1988). We now consider whether the evolution of the rule announced in *Batson v. Kentucky* and its progeny supports the prosecutor's unilateral refusal to justify or explain his use of peremptory challenges in this matter.

Appellant, the Commonwealth of Pennsylvania, maintains that simply because some blacks were stricken from the venire by the prosecutor's use of peremptory challenges, this fact alone is insufficient to establish a *prima facie* case of discrimination under the rule announced in *Batson v. Kentucky*. They assert, therefore, that the Superior Court incorrectly adopted what appellants refer to as a *per se* approach for finding a discriminatory purpose based solely upon numbers. This, it is argued, is insufficient to establish a discriminatory motive on behalf of the prosecution or to demand that the prosecution give non-discriminatory reasons for employing such challenges.

Conversely, Appellee maintains that, absent a valid explanation by the prosecution, any time members of a specific racial or ethnic class are disproportionately excluded from serving on a jury as a result of the prosecution's use of peremptory challenges, an inference of impropriety necessarily arises. It is further argued that the existence of these egregiously unrepresentative juries deprives the defendants of a fair trial and is a practice which must be rectified.

In *Batson*, the United States Supreme Court identified those factors relevant to establishing a *prima facie* case of purposeful discrimination.

> To establish such a case, a defendant first must show that he is of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits "those to discriminate who are of a mind to discriminate". Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race. This combination of factors in the empanelling of the petit jury, as in the selection of the venire, raises the necessary inference of purposeful discrimination.

*Batson*, 476 U.S. at 96, 106 S.Ct. at 1723 (citations omitted).

Instantly, it is undisputed that Appellee is a black man and that the prosecutor exercised his peremptory challenges to strike five (5) blacks from the panel. Defense counsel on two separate occasions made timely objections to the prosecutor's use of his peremptory challenges and on each occasion the prosecutor refused to justify his use of them. The inference which arises from this course of conduct, we believe, sufficiently satisfies the *prima facie* requirements to suggest purposeful discrimination under *Batson*, thus shifting the burden of proof to the prosecution, requiring it to provide an adequate and legitimate explanation for striking the potential black jurors in question.

Pursuant to *Batson*, once the burden is shifted to the prosecution, the prosecutor must give valid non-discriminatory reasons for the use of his peremptory challenges and it is insufficient to merely state that they were made in good faith. *Id.* at 96–97, 106 S.Ct. at 1723. Here the prosecutor failed to attempt to comply with that standard. Rather, he unequivocally refused to recognize any obligation on his

behalf to provide any explanation whatsoever. Indeed, after the defense had objected to the first two blacks being stricken, the trial judge suggested that if the challenge were to be raised again upon completion of the *voir dire* process, he would request the prosecutor to explain his reasons for exercising his peremptory challenges. At the end of the *voir dire*, with 5 of 6 challenges striking blacks from the panel, the trial judge, notwithstanding, inexplicably refused to elicit an explanation from the prosecutor. Instead, the trial court dismissed defense counsel's motions as "preposterous." However, pursuant to *Batson*, by failing to advance a racially neutral explanation, the prosecutor failed to carry his burden of proof as required and the resulting verdict was thereby "tainted."

The Commonwealth maintains that while the prosecution's use of five out of six peremptory challenges to exclude blacks from the jury states a statistical fact, it does not establish a pattern or *prima facie* case of discriminatory intent. Apparently, the proponents of this argument, including the trial court, are impressed by the fact that not all blacks suffered exclusion from the jury in this case. However, the inference of discrimination arising from the process employed in selecting the jury is not automatically defeated simply because two blacks ultimately survived the process and were seated on the jury.[10]

10. As noted by Mr. Justice Marshall, the resulting presence of two blacks on a jury by itself in no way insulates the empanelment of that jury from an inference of discrimination. *Batson v. Kentucky,* 476 U.S. 79, 93–94, 106 S.Ct. 1712, 1727–28, 90 L.Ed.2d 69 (1986) (Marshall, J., concurring). Additionally, in *Powers v. Ohio,* 499 U.S. ——, ——, 111 S.Ct. 1364, 1371, 113 L.Ed.2d 411, 426 (1991), Justice Kennedy, speaking on behalf of the majority, observed that "A prosecutor's wrongful exclusion of *a juror* by a race-based peremptory challenge is a constitutional violation committed in open court at the outset of the proceedings. The overt wrong, often apparent to the entire jury panel, casts doubt over the obligation of the parties, the jury and indeed the court to adhere to the law throughout the trial of the cause." (Emphasis added). Apparently, therefore, the improper exclusion of a single juror based upon race, is sufficient to "taint" the proceedings and the number of members of his race that survives to remain on the jury is irrelevant for purposes of legitimizing the selection process and the ultimate empanelment.

The rationale employed by the trial court in concluding that the defendant failed to establish a *prima facie* case of discrimination more closely parallels that employed by the United States Supreme Court over twenty-five years ago in *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), which was expressly overruled in *Batson v. Kentucky*. The *Swain* Court's decision was characterized in *Batson* as requiring a defendant "to show that the prosecution engaged in a systematic pattern of exclusion, based on race, over a series of cases" in order to establish a *prima facie* case. *Batson*, 476 U.S. at 92–93, 106 S.Ct. at 1720–21. This would indeed impose upon defendants "a crippling burden of proof," *id.* at 92, 106 S.Ct. at 1720, as one cannot expect the prosecution to publicly admit such improper motives. Accordingly, we cannot approve of the trial court implicitly following the *Swain* Court's path in attempting to assign to a defendant the Herculean burden of establishing such a discriminatory pattern.

While the differences between peremptory challenges and challenges for cause should remain viable and distinct, the fundamental and guaranteed rights to Equal Protection and the right to a fair trial are inviolable and not to be circumvented or diminished based upon general speculation or semantic argument. Instantly, the Superior Court properly vacated the judgment of sentence imposed by the trial court as that court's application of the *Batson* rule placed upon the defendant the unreasonable requirement that he read the prosecutor's mind and prove his ill motives. As a consequence, the defendant suffered a systematic deprivation of his right to a fair trial. In this matter, at a minimum, sufficient exclusion occurred to require the prosecutor to disclose his "non-discriminatory" reasons. His failure to do so resulted in a spectre of discrimination which lingered over the proceedings and resulted in the deprivation of an individual's liberty, an effect we cannot accept.

Our rejection of the overly restrictive approach, as applied by the trial court, is bolstered by the more recent pronouncement of the United States Supreme Court explain-

ing its interpretation of the *Batson* rule. In *Powers v. Ohio*, 499 U.S. ——, ——, 111 S.Ct. 1364, 1368, 113 L.Ed.2d 411, 422 (1991), the United States Supreme Court, in defining the intended breadth of *Batson*, held:

> In *Batson*, we spoke of the harm caused when a defendant is tried by a tribunal from which members of his own race have been excluded. But we did not limit our discussion in *Batson* to that one aspect of the harm caused by the violation. *Batson* "was designed 'to serve multiple ends,' " only one of which was to protect individual defendants from discrimination in the selection of jurors. *Allen v. Hardy*, 478 U.S. 255, 259, 92 L.Ed.2d 199, 106 S.Ct. 2878 [2880] (1986) (per curiam) (quoting *Brown v. Louisiana*, 447 U.S. 323, 329, 65 L.Ed.2d 159, 100 S.Ct. 2214 [2220] (1980)). *Batson* recognized that a prosecutor's discriminatory use of peremptory challenges harms the excluded jurors and the community at large. 476 U.S. at 87, 90 L.Ed.2d 69, 106 S.Ct. 1712 [at 1718].

The *Powers* Court identified the existence of several interests to be safeguarded when examining the jury selection process as a whole. For example, not only are the defendant's own rights at stake in these matters, but the rights of citizens in general to participate in society's mechanism of justice by engaging in jury duty are also jeopardized.[11] As the *Powers* Court explained:

> We hold that the Equal Protection Clause prohibits a prosecutor from using the state's peremptory challenges to exclude otherwise qualified and unbiased persons from the petit jury solely by reason of their race, a practice that forecloses a significant opportunity to participate in civic life. An individual juror does not have a right to sit

---

**11.** It is apparent that the effect of this clarification of *Batson* in *Powers* broadens rather than constricts a defendants' right to challenge apparent discriminatory conduct in the jury selection process. The scope and application of the *Batson* rule was further broadened in *Edmonson v. Leesville Concrete Co., Inc.,* —— U.S. ——, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991), wherein the Supreme Court held that race-based exclusion of potential jurors in *a civil action* violates the excluded persons' equal protection rights and that a private civil litigant may raise the equal protection claim of the excluded juror.

on any particular petit jury, but he or she does possess the right not to be excluded from one on account of race.

*Id.* 499 U.S. at ——, 111 S.Ct. at 1370, 113 L.Ed.2d at 424.

The Court went on to add:

Both the excluded juror and the criminal defendant have a common interest in eliminating racial discrimination from the courtroom. A venireperson excluded from jury service because of race suffers a profound personal humiliation heightened by its public character. The rejected juror may lose confidence in the court and its verdicts, as may the defendant if his or her objections cannot be heard.

*Id.* 499 U.S. at ——, 111 S.Ct. at 1372, 113 L.Ed.2d at 426.

In *Powers*, the United States Supreme Court upheld a *white* defendant's right to object to the prosecution's exclusion of *blacks* from the jury through the use of its peremptory challenges in recognition of *the broad right of a defendant in having a racially neutral jury selection process*. The majority expressly identified the further interest of having any judicial process which places an individual's life or liberty at stake be completely fair both in perception and reality. The Court emphasized that:

This is not because the individual jurors dismissed by the prosecution may have been predisposed to favor the defendant; if that were true, the jurors might have been excused for cause. Rather, it is because racial discrimination in the selection of jurors "casts doubt on the integrity of the judicial process," *Rose v. Mitchell,* 443 U.S. 545, 556, 61 L.Ed.2d 739, 99 S.Ct. 2993 [3000] (1979), and places the fairness of a criminal proceeding in doubt.

*Powers,* 499 U.S. at ——, 111 S.Ct. at 1371, 113 L.Ed.2d at 425.

In applying the totality of those considerations to the matter before us, we agree with the Superior Court that the trial judge was too restrictive in interpreting the requirements of *Batson*. As the Court in *Powers* further observed:

> [T]he purpose of the jury system is to impress upon the criminal defendant and the community as a whole that a verdict of conviction or acquittal is given in accordance with the law by persons who are fair. The verdict will not be accepted or understood on these terms if the the jury is chosen by unlawful means at the outset. Upon these considerations, we find that a criminal defendant suffers a real injury when the prosecutor excludes jurors at his or her own trial on account of race.

*Powers*, 499 U.S. at ——, 111 S.Ct. at 1372, 113 L.Ed.2d at 426. Thus, the type of invidious discrimination and the resultant undermining of the integrity of the trial process sought to be prohibited by the spirit of *Batson* and explicitly condemned in *Powers*, demands no less than a valid prosecutorial justification be given each time peremptory challenges are exercised disproportionately to exclude from juries members of a particular racial class. Absent such a justification, as in the instant matter, the inference of purposeful discrimination, which naturally arises from such a use of peremptory challenges, becomes too strong to withstand constitutional scrutiny.

Accordingly, the order of the Superior Court is affirmed and the matter remanded for a new trial.

LARSEN and McDERMOTT, JJ., concur in the result.

ZAPPALA and PAPADAKOS, file concurring opinions.

ZAPPALA, Justice, concurring.

I concur in the result. I write separately to raise the question whether, following *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and its progeny, the practice of allowing peremptory challenges has become such a burden to the system that it would be better to discard it entirely.

Peremptory challenges, in their original conception, were intended to offer the opportunity to dismiss veniremen from the petit jury without assigning a reason. Both prosecution and defense were permitted to strike individual jurors arbi-

trarily, even irrationally, on the basis of irrelevant personal characteristics.

> The peremptory challenge is often exercised ... on grounds normally thought irrelevant to legal proceedings or official action, namely the race, religion, nationality, occupation or affiliations of people summoned for jury duty. For the question a prosecutor or defense counsel must decide is not whether a juror of a particular race or nationality is in fact partial, but whether one from a different group is less likely to be.

*Swain v. Alabama,* 380 U.S. 202, 220–221, 85 S.Ct. 824, 836, 13 L.Ed.2d 759 (1965).

In *Batson,* the United States Supreme Court held that a defendant who is a member of a cognizable racial group could, on equal protection grounds, challenge the use of peremptory challenges to remove members of his race. In *Holland v. Illinois,* 493 U.S. 474, 110 S.Ct. 803, 107 L.Ed.2d 905 (1990), the Court held that although a white defendant had standing to challenge the prosecution's use of peremptory challenges to exclude blacks from the jury, his Sixth Amendment right to the fair possibility of a representative jury would not be violated had such occurred. In *Powers v. Ohio,* 499 U.S. ——, 111 S.Ct. 1364, 1377, 113 L.Ed.2d 411 (1991), the Court answered the question not raised in *Holland,* holding that a white defendant may, on equal protection grounds, challenge the peremptory exclusion of black jurors.

The Supreme Court has stated that "it remains for the trial courts to develop rules, without unnecessary disruption of the jury selection process, to permit legitimate and well-founded objections to the use of peremptory challenges as a mask for race prejudice." *Id.* 111 S.Ct. at 1374. I question whether this can in fact be accomplished. Mere disparity of numbers, we have held, is insufficient to raise an inference of discriminatory use of peremptories. Yet those "who are of a mind to discriminate" will surely not make public admission of their intention. Thus it is difficult to imagine how a court could make an objective finding of a prima

facie case. It is just as difficult to imagine how a court could cite an objective basis for rejecting any non-racial reason for the use of a peremptory offered by the prosecutor. These difficulties are compounded when the trial court's determination is the subject of appellate review.[1]

Furthermore, as Justice Scalia noted in his dissent in *Powers*, "the precise scope of the exception [*Batson* ] has created remains to be determined. It is unclear, for example, whether it applies to government peremptories in civil cases; whether it applies to peremptories by parties other than the government; and whether it applies to peremptories based on the defendant's sex, religion, age, economic status and any other personal characteristic unrelated to the capacity for responsible jury service." 499 U.S. at ——, 111 S.Ct. at 1381.[2]  Indeed, although the *Batson* rule is

---

1.  In *Hernandez v. New York*, —— U.S. ——, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991), a majority of the Supreme Court held that a trial court's finding on the issue of discriminatory intent must be affirmed unless it is clearly erroneous. (Plurality Opinion of Kennedy, J., joined by Rehnquist, C.J., White, and Souter, JJ.; Concurring Opinion of O'Connor, J., joined by Scalia, J.)  In that case, the trial court accepted as race neutral the prosecutor's proffered explanation that prospective Latino jurors were struck from the venire because he suspected they might not abide by official translations of Spanish language testimony.

   Justice O'Connor rejected any notion that an equal protection violation in the use of peremptory challenges could be made out simply by showing that the prosecutors's rationale might have the effect of excluding a disproportionate number of persons of a particular race. Such an approach would run

   > the serious risk of turning *voir dire* into a full blown disparate impact trial, with statistical evidence and expert testimony on the discriminatory effect of any particular nonracial classification.  In addition to creating unacceptable delays in the trial process, such a practice would be antithetical to the nature and purpose of the peremptory challenge.  Absent intentional discrimination violative of the Equal Protection Clause, parties should be free to exercise their peremptory strikes for any reason or no reason at all.  The peremptory challenge is, "as Blackstone says, an arbitrary and capricious right; and it must be exercised with full freedom, or it fails of its full purpose." *Lewis v. United States*, 146 U.S. 370, 378, 13 S.Ct. 136, 139, 36 L.Ed. 1011 (1892) (internal quotations omitted). —— U.S. at ——, 111 S.Ct. at 1874.

2.  Later in the Term, the Supreme Court answered some of these questions in *Edmonson v. Leesville Concrete Co., Inc.*, —— U.S. ——,

grounded in the equal protection clause, it is not apparent how the traditional measure of validity in equal protection analysis—strict scrutiny, heightened scrutiny, rational basis—is to be applied, if in fact it can be applied.

It would seem, then, that we are headed for much contentious litigation over questions germane not to the guilt or innocence of the accused, but to the fairness, or apparent fairness, of the process by which guilt or innocence is determined.[3] The questions, moreover, would seem to be inherently unanswerable; if the traditional purpose of peremptory challenges is to eliminate "irrational ... suspicions and antagonisms," *Swain v. Alabama*, 380 U.S. at 224, 85 S.Ct. at 838, how can the courts demand rational explanations for their use? Instead of pushing our courts into the morass of trying to judge between explanations for the irrational, perhaps the entire process would be better served by abandoning the use of peremptory challenges altogether, trying cases before the first group of twelve jurors randomly chosen from the venire, and allowing only challenges for cause.

PAPADAKOS, Justice, concurring.

I concur only in the result reached here because, in my view, the majority reverses the trial court's finding that the defendant did not satisfy his burden of showing a *prima facie* case of purposeful discrimination in exercising peremptory challenges against blacks without giving definitive guidance to the bench and bar as to how we intend to apply *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and *Powers v. Ohio*, 499 U.S. ——, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), to future cases.

The majority simply concludes, without real explanation, that by exercising peremptory challenges against five

111 S.Ct. 2077, 114 L.Ed.2d 660 (1991), holding that race-based exclusion of potential jurors in a civil case violates the excluded persons' equal protection rights and that a private civil litigant may raise the equal protection claim of the excluded juror.

**3.** Cf. *Edmonson v. Leesville Concrete Company, Inc.,* (Scalia, J., dissenting), —— U.S. at ——, 111 S.Ct. at 2095–96.

blacks where two challenges are made to the strikes, that an inference arises to suggest purposeful discrimination under *Batson.* Does this also mean that four strikes and two challenges raise the same inference? What about three strikes and one challenge or two strikes and two challenges?

It seems to me that the teaching of *Batson* and *Powers* is to guarantee that no juror is to be stricken for a racially discriminatory reason, because each unexplained strike raises the inference of discrimination. Accordingly, the only way to remedy this impropriety is to require the prosecutor and defense counsel to give a racially neutral justification each time either uses a peremptory challenge to strike anyone from a venire panel.

Absent such a clear message from us, prosecutors, defense counsel and the lower courts will still struggle to anticipate when our conscience will be moved to find an inference of discrimination. Additionally, since the *Batson* issue is raised in a pre-trial setting and reviewed post-verdict, the integrity of civil and criminal judgments will be in jeopardy until we formulate a clear and simple rule. Unfortunately, I do not believe the majority has fashioned such a rule today.

Since it is clear that the use of peremptory challenges can easily be made a tool for the practice of discrimination in the selection of jurors in civil and criminal cases, the entire system of peremptory challenges has been called into question and perhaps should be eliminated.