679 A.2d 1253

**COMMONWEALTH of Pennsylvania, Appellee,**

**v.**

**Christopher McNEIL, Appellant.**

Supreme Court of Pennsylvania.

Reargued Jan. 22, 1996.

Decided June 25, 1996.

44

46

John P. Cotter, Philadelphia, for C. J. McNeil.

Catherine Marshall, Karen A. Brancheau, Hugh J. Burns, Jr., Robert A. Graci, Office of Attorney General, for Com.

Before NIX, C.J., and FLAHERTY, ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

**OPINION**

ZAPPALA, Justice.

This is a direct appeal pursuant to 42 Pa.C.S. §§ 722(4) and 9711(h). Following a jury trial, Appellant, Christopher J. McNeil, was found guilty of murder in the first degree, two counts of robbery and one count each of recklessly endangering another person and possession of an instrument of crime. He was sentenced to death for the murder conviction.[1] The jury found that the aggravating circumstance of committing the killing while in the perpetration of a felony, 42 Pa.C.S. § 9711(d)(6), outweighed the mitigating circumstance of acting under the influence of extreme mental or emotional disturbance, 42 Pa.C.S. § 9711(e)(2).

The record establishes that late in the evening of December 4, 1990, the victim, John Airasian, and Wanda Douglas were sitting in the victim's parked van at 51st Street and Lancaster Avenue in Philadelphia. The two had known each other for four or five months. They had stopped at a gas station to purchase matches. Appellant approached the victim and asked for some change. The victim refused to give Appellant money and Appellant stated, "You'll regret it."

The victim and Douglas then drove to Parkside Avenue and parked near basketball courts to drink beer and smoke cocaine. Douglas then noticed Appellant, whom she had known from the neighborhood, walk past the van, stop and then walk back, approaching the van from the driver's side. Douglas told the victim that Appellant was the same man who wanted money earlier. Appellant again asked the victim for some change. The victim responded that he had none. Appellant then fired a shot through the closed window, striking the victim in the head. When Appellant fired a second shot, the victim collapsed sideways and cried, "Help, help, I think I am dying!"

---

1. Appellant also received a concurrent sentence of ten to twenty years imprisonment for one robbery count and concurrent sentences of five to ten years and one to five years, respectively, for the remaining robbery count and possession of an instrument of crime. No sentence was imposed on the charge of recklessly endangering another person.

Appellant ordered Douglas to the passenger seat and threatened to kill her if she did not comply. The victim stirred as Douglas was moving inside the van and Appellant shot him again at least two more times. Appellant then went through the victim's jacket looking for money or valuables and ordered Douglas to go through the victim's pockets. While searching the victim, Appellant asked Douglas, who is black, "What are you doing with this white man?" Fearful of disclosing that the victim was her friend, she replied, "Trying to do the same thing [you are], trying to get paid." (N.T. 3/30/92, pp. 87–94).

Appellant began driving the van and debated aloud about letting Douglas go. He then stole a gold chain from the victim's neck and a charm from Douglas. Appellant ultimately stopped near a gas station, warned Douglas not to tell anyone about the killing, and let her out. After Douglas exited the van, she reported the incident to a security guard in a nearby apartment building. She did not reveal Appellant's identity at that time. The police arrived and Douglas reported the location of the murder.

A short time later, an officer discovered the van with the victim partially hanging out from the rear and radioed for back-up. When medical assistance arrived, the victim showed no signs of life. An autopsy later revealed that the victim had died from four close-range gunshot wounds, each of which was deemed fatal.[2] All four projectiles were recovered from the body. It was the medical examiner's opinion that the muzzle of the gun had been held about six inches from the victim's body and no more than 24 inches away.

Appellant was arrested for the murder and was positively identified as the shooter by Douglas. At trial, the Commonwealth called Wanda Lytle as a witness. Lytle testified that she was driving on Parkside Avenue near the park on the night of the murder and saw Appellant standing next to a van with two people inside. Lytle stated that she had known Appellant since childhood, but did not know Douglas. She

---

**2.** The wounds were found over the left cheek, through the right jaw line, through the right eye, and in the lower back.

believed that the female in the van was another woman that she knew. Lytle further testified that when she returned from the grocery store about one hour later, the van was no longer there but police were in the area.

Following his conviction, Appellant's counsel filed post-trial motions and was permitted to withdraw. Current counsel filed supplemental post-trial motions, raising claims of ineffective assistance of counsel. The trial court denied those motions and formally sentenced Appellant to death.

Pursuant to our obligation to review the sufficiency of the evidence in a case in which the death penalty has been imposed, *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 454 A.2d 937 (1982), *cert. denied*, 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983), we conclude that the eyewitness testimony and corroborating evidence are clearly sufficient to support the first degree murder conviction.

Appellant first argues that the court erred in refusing a jury view of the crime scene. He contends that a view of the crime scene would establish that Commonwealth witness Wanda Lytle, who placed Appellant at the murder scene at the relevant time, was not in a position to identify him.[3]

The decision whether to grant a request for a jury view is within the discretion of the trial judge. Pa.R.Crim.P. 1112. Absent an abuse of discretion, the denial of a request for a jury view will not be overturned. *Commonwealth v. Pierce*, 537 Pa. 514, 645 A.2d 189 (1994); *Commonwealth v. Mangini*, 478 Pa. 147, 386 A.2d 482 (1978). The trial court stated that it denied the request because it believed that the conditions of the scene at the time of trial were not reasonably similar to the conditions at the time of the murder. We find no abuse of discretion. Moreover, it appears that Appellant's argument relates more to Lytle's credibility than to the physical configuration of the street.

**3.** Appellant asserts that Lytle was two hundred feet away when she allegedly observed him standing next to the van. To the contrary, Lytle testified that she was "so close [to the people in the van], [she] could reach out and touch them." (N.T. 4/1/92, p. 102).

■ Appellant's remaining arguments challenge the effectiveness of trial counsel. In order to succeed on a claim of ineffective assistance of counsel, it must be determined that the underlying claim is of arguable merit, that counsel had no reasonable basis for his performance, and that the defendant was thereby prejudiced. *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987).

■ Appellant first contends that counsel was ineffective for failing to object to the prosecutor's peremptory striking of six black jurors in violation of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Appellant asserts that this is a "racial case" since a black man is charged with the murder of a white man. He concludes that the racial makeup of the jury—ten white persons and two black persons—was favorable to the Commonwealth and that his trial counsel should have objected to the "inconsistent" striking of black jurors.[4]

■ To prevail on a *Batson* challenge, a defendant must first establish a *prima facie* case by showing that the prosecutor discriminated in the jury selection process based on evidence of the use of peremptory challenges. *Commonwealth v. Spence*, 534 Pa. 233, 627 A.2d 1176 (1993); *Batson v. Kentucky, supra.* The trial court rejected Appellant's claim, concluding that he had not made any *prima facie* showing that the strikes were discriminatory, noting only that the jurors were stricken. Appellant did not establish the race of potential jurors who were acceptable to the Commonwealth, but peremptorily excluded by the defense, or the race of all of those who were removed by the prosecution. Appellant also did not establish that counsel's failure to object was unreasonable or that he was thereby prejudiced. Appellant failed to ask trial counsel, who was called to testify on other matters

---

4. Appellant contends that the prosecutor's use of peremptory challenges was "inconsistent" since one juror was struck because her background was similar to that of Wanda Douglas while three other jurors were struck because their backgrounds were different. This assertion is not supported by the record. Assuming, arguendo, that the use of the peremptory challenges was inconsistent, such inconsistency does not establish a racial motivation by the prosecutor.

during post-trial motions, why he had not raised a *Batson* claim at the appropriate time during jury selection.

. Furthermore, although the law is clear that a prosecutor need not state the reasons for his peremptory challenges until the defense has established a *prima facie* case of discrimination, the prosecutor in the instant case volunteered race-neutral reasons, which the trial court credited.[5] Thus, this claim lacks arguable merit and counsel cannot be deemed ineffective for failing to pursue it. *Commonwealth v. Durst,* 522 Pa. 2, 559 A.2d 504 (1989).

■ Appellant next contends that counsel was ineffective for failing to object when Detective Hughes testified that the victim's family had become friendly with Wanda Douglas and when the prosecutor referred to this testimony in his closing argument. Appellant argues that such testimony was an improper appeal to the emotions of the jury that bolstered Douglas's credibility. He concludes that counsel had no reasonable basis for failing to object and that he was prejudiced thereby.

The Commonwealth elicited the detective's brief comment as a response to repeated defense attacks on Douglas's character and credibility. The defense portrayed Douglas as a prostitute and cocaine addict who was not a friend of the victim but was rather selling her services to him. As the trial court properly found that there was a legitimate basis for the prosecutor's comments, counsel cannot be found ineffective for failing to object. Moreover, Appellant clearly has not established that the result of his trial would have been different without the challenged testimony or the prosecutor's reference to it in his closing argument. *Commonwealth v. Pierce, supra.*

■ Appellant also claims that trial counsel was ineffective for failing to object to Commonwealth evidence regarding his

5. Appellant's reliance upon *Commonwealth v. Dinwiddie,* 529 Pa. 66, 601 A.2d 1216 (1992), is misplaced. In *Dinwiddie,* the prosecutor refused to explain any of his peremptory challenges, notwithstanding the trial court's request.

arrest for shoplifting nine days after the murder and for failing to ask for a cautionary instruction. The officer who arrested Appellant for shoplifting noticed that the backs of Appellant's hands were scratched and covered with scabs. The connection between the scratches and the murder was that the victim was in the carpet installation business and a number of tacking strips[6] were found in the van under and near the body. At trial, another officer testified that his hands were also scratched, even though he had been wearing gloves, when he removed the victim's body from the van.

At the time the testimony was taken, the court called both counsel to sidebar and questioned defense counsel about his failure to object and the need for a cautionary instruction. Although he did not convey his strategy, defense counsel clearly stated on the record that he had a reason for not wanting a cautionary instruction. (N.T. 4/2/92, pp. 104–105).

The Commonwealth persuasively argues that trial counsel did not object to the evidence because it enabled him to present Appellant's arrest photograph. Douglas had testified earlier that the perpetrator was clean-shaven. In the arrest photo, however, taken less than two weeks after the murder, Appellant appeared with a full beard. Trial counsel was therefore able to impeach Douglas's testimony by allowing the introduction of Appellant's arrest for a minor offense. As counsel had a reasonable basis for not objecting and for not requesting a cautionary instruction, he cannot be deemed ineffective.

■■■ Appellant contends that trial counsel was ineffective for failing to object to the following statements made by the prosecutor during closing argument:

A. That Wanda Douglas was abused on the witness stand by Appellant's trial attorney. (N.T. 4/7/92, p. 4).

B. That Wanda Douglas was being accepted by the victim's family. (N.T. 4/7/92, pp. 46–47).

---

6. Tacking strips, which are used to anchor carpeting to the floor, are pieces of wood with tacks protruding about one-half inch.

C. That the jury has no duty to look for reasonable doubt. (N.T. 4/7/92, p. 48).

D. That when Appellant has no defense, his attorney will trash the Commonwealth and police witnesses. (N.T. 4/7/92, p. 48).

E. That for sixteen months Appellant knew everything the prosecutor knew. (N.T. 4/7/92, p. 49).

F. That Appellant's trial attorney was trying to hide Appellant from the jury because Appellant looks crazy. (N.T. 4/7/92, p. 61).

G. That Appellant shoplifts from time to time. (N.T. 4/7/92, p. 70).

H. That Appellant could have been mad at white men. (N.T. 4/7/92, p. 78).

I. That Appellant was a street bum. (N.T. 4/7/92, p. 82).

Appellant baldly asserts that the above remarks were inflammatory and diverted the jury's attention from the evidence to Appellant and his counsel. He suggests that due to the prosecutor's improper comments, the jury could not weigh the evidence objectively and return a true verdict.

 The prejudicial effect of a district attorney's remarks must be evaluated in the context in which they occurred. *Commonwealth v. Smith,* 490 Pa. 380, 416 A.2d 986 (1980). It is well-settled that a district attorney must have reasonable latitude in fairly presenting a case to the jury and must be free to present his or her arguments with logical force and vigor. *Id.* The prosecutor is also permitted to respond to defense arguments. *Commonwealth v. Johnson,* 527 Pa. 118, 588 A.2d 1303 (1991). Reversible error exists only if the prosecutor has deliberately attempted to destroy the objectivity of the factfinder such that the unavoidable effect of the supposedly offending language would be to create such bias and hostility toward the defendant in the minds of the jurors that they could not weigh the evidence and render a true verdict. *Commonwealth v. Carpenter,* 511 Pa. 429, 515 A.2d 531 (1986); *Commonwealth v. Baker,* 531 Pa. 541, 614 A.2d 663 (1992).

This standard has not been met. After a full review of the prosecutor's and defense counsel's closing arguments, it appears the above-cited comments were either references to evidence, responses to defense arguments or isolated nonprejudicial remarks relative to Appellant's trial attorney. When read in context, none of the comments warrants a new trial.

 Appellant next argues that his counsel was ineffective for failing to request a jury charge that evidence of lack of motive could be used in determining guilt or innocence.[7] The record reveals that the court initially instructed as to motive and the difference between "intent" and "motive" (N.T. 4/7/92, pp. 101–02). The jury thereafter requested another instruction on intent, malice and motive. The court properly reinstructed on those concepts. (N.T. 4/8/92, pp. 2–4). As the evidence suggested possible motives, the trial court would most likely have denied the charge had Appellant's counsel requested it. Thus, since the jury was properly instructed, counsel cannot be deemed ineffective for failing to request an additional charge.[8]

 Appellant next queries whether counsel was ineffective for failing to impeach Wanda Douglas with her prior criminal record. Appellant contends that at the time Douglas testified, she had an open case for prostitution and criminal solicitation "which was in bench warrant status." Appellant's Brief at 38. Appellant argues that the arrest would have established that Douglas lied when she denied being a prostitute and would have showed a motive for bias in favor of the Commonwealth.

Initially, the record reveals that Douglas's criminal record at the time of trial consisted of only an arrest for prostitution. Thus, no conviction existed at the time of trial and the arrest was not for a *crimen falsi* offense. Moreover, as there was

---

**7.** Appellant admits that the Commonwealth was not required to prove motive. Instead, he argues that the failure to prove motive may cause reasonable doubt in the minds of the jury.

**8.** *See, Commonwealth v. Holland,* 480 Pa. 202, 389 A.2d 1026 (1978) (trial court properly refused instruction that absence of motive could raise a reasonable doubt).

substantial evidence admitted at trial suggesting that Douglas was a prostitute, evidence of her arrest would merely have been cumulative.[9] Thus, even assuming that Appellant's claim is of arguable merit, no prejudice has been established.

Also, bias in favor of the prosecution in exchange for favorable treatment for an outstanding criminal charge is not apparent since the arrest for prostitution was made in 1987, five years before trial.[10] *Compare, Commonwealth v. Evans,* 511 Pa. 214, 512 A.2d 626 (1986) (defendant should have been able to cross-examine Commonwealth's key witness because of ten to fifteen burglary and conspiracy charges pending against him in the same jurisdiction).

Finally, Appellant contends that counsel was ineffective for failing to object to the victim impact testimony of Joan Frinzi, the victim's aunt. During the sentencing hearing, Frinzi essentially testified that the victim was gracious, kind and generous and that he had concern for the underdog and the elderly (N.T. 4/9/92, pp. 34–42).[11] Appellant argues that such evidence is irrelevant hearsay that inflamed the passions

9. Officer Carter essentially testified that she believed Douglas was a prostitute and had warned her to stop obstructing the highway on several occasions. (N.T. 4/1/92, pp. 36–38). Also, throughout trial and in closing argument, defense counsel continuously suggested that Douglas was a prostitute.

10. The trial court noted that it initially found merit to this claim to the extent that the witness had an open criminal matter. However, it concluded that Appellant did not establish that Douglas was rewarded for her testimony or that the open matter had been disposed of favorable to her. Trial court opinion at 11. It also noted that Appellant failed to establish any prejudice suffered by counsel's omission.

11. Contrary to the position taken in the dissenting opinion, statements concerning qualities of the victim fall within the rubric "victim impact evidence." Amended § 9711(a)(2), although not controlling in the instant case, describes victim impact evidence as "evidence **concerning the victim** and the impact that the death of the victim has had on the family of the victim . . . ." (emphasis added). Also, in *Payne v. Tennessee,* 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991), the United States Supreme Court noted that victim impact evidence "is designed to show each victim's 'uniqueness as an individual human being.'" *Id.,* 501 U.S. at 823, 111 S.Ct. at 2607. Since Frinzi's testimony concerned characteristics of the victim, i.e., that he was gracious, kind and generous, we construe it to be victim impact evidence.

56

of the jury and that counsel was ineffective for failing to object. He further argues that Frinzi's testimony was presented in an attempt to add another aggravating circumstance.

We note that victim impact evidence was inadmissible under the procedures established by the Sentencing Code, 42 Pa.C.S. § 9711, prior to its amendment on October 11, 1995. *See Commonwealth v. Fisher,* 545 Pa. 233, 681 A.2d 130 (1996). Appellant's claim is therefore of arguable merit since, at the time of the penalty hearing, Frinzi's testimony concerning the victim's generosity and kindness was inadmissible. We find no reasonable basis for counsel's failure to object. Further, we are unable to determine how the sentencing jury considered the testimony in weighing the aggravating and mitigating circumstances. As only one aggravating and one mitigating circumstance were found, the jury may have improperly relied upon Frinzi's testimony to tilt the balance of evidence in favor of the death penalty. A new sentencing hearing is therefore required. We note that the recent amendment to 42 Pa.C.S. § 9711 does not apply to the new sentencing hearing since § 2 of Act 22 of 1995 provides that the amendment shall only apply to sentences imposed for offenses which take place on or after the effective date of the Act.[12]

Accordingly, we affirm the conviction of first degree murder, vacate the sentence of death, and remand the matter to the Court of Common Pleas of Philadelphia County for a new sentencing hearing.

CAPPY, J., files a Dissenting Opinion in which CASTILLE and NEWMAN, JJ., join.

**12.** Appellant has also raised the following issues regarding the penalty phase of trial: (1) that the trial court erred by instructing the jury that it could consider the robbery of the victim and Wanda Douglas as part of Appellant's history of violent felony convictions; (2) that counsel was ineffective for failing to present expert medical testimony as to his mental condition and for failing to present his mental health evaluation reports; and, (3) that counsel was ineffective for failing to object to the prosecutor's closing argument. As we have granted Appellant a new sentencing hearing on other grounds, these issues need not be addressed.

CAPPY, Justice, dissenting.

I respectfully dissent from the decision of the majority. I do not agree with the conclusion of the majority opinion that the testimony of the victim's aunt could be considered "victim impact" testimony. The aunt did not offer testimony as to the effect of the murder upon her or her immediate family; she merely testified as to the general good character of the victim. Thus, I do not agree that the trial court erred in permitting this testimony to be heard by the jury.

Further, as I stated in my concurring opinion in *Commonwealth v. Fisher*, 545 Pa. 233, 681 A.2d 130 (1996), I do not believe that "victim impact" testimony is inadmissible in the penalty stage of a capital case. Thus, even if the testimony at issue could possibly be considered as "victim impact" testimony, I would disagree with the conclusion of the majority that a new penalty hearing is required in the instant case.

CASTILLE and NEWMAN, JJ., join this dissenting opinion.