**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**John HILL, Appellant.**

Superior Court of Pennsylvania.

Argued July 14, 1998.
Filed March 8, 1999.
Reargument Denied May 5, 1999.

---

Thomas R. Quinn, Philadelphia, for appellant.

Jonathan W. Hugg, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before KELLY and JOYCE, JJ., and CERCONE, President Judge Emeritus.

KELLY, J.:

¶ 1 Appellant, John Hill, asks us to determine whether a trial court is required, under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), to recall and seat venirepersons who have been excused through the use of peremptory challenges. We hold that a trial court has the discretion to fashion a remedy for properly sustained *Batson* objections, which, depending on the circumstances of the case, may involve calling additional jurors to the venire, granting additional challenges, seating the challenged jurors; or beginning a new jury selection. Accordingly, we affirm.

¶ 2 The relevant facts and procedural history of this appeal are as follows. On May 26, 1996, Appellant and an accomplice approached the victim outside his car in the McDonalds' parking lot, located at 4200 Broad Street in Philadelphia. While his accomplice brandished a gun, Appellant demanded money from the victim and threatened to kill him if he did not comply. The victim told Appellant that he had no money. Appellant grabbed the victim's keys. Appellant and his accomplice persisted in their demands. The victim finally gave twenty dollars to each of them. Appellant's accomplice then grabbed the victim's wallet and Appellant grabbed his jacket and searched through it. A struggle ensued and the victim kicked Appellant's accomplice in the chest and face, at which point he released the wallet and both Appellant and the accomplice fled. Police arrived and chased Appellant and his accomplice. Appellant and his accomplice were arrested.

¶ 3 Additionally, the trial court opinion provides the following facts:

On December 3, 1996, jury selection in the trial of [Appellant], John Hill, and a co-defendant commenced. A panel of fifty venire persons were brought to the courtroom for *voir dire*. Because there were two defendants, each defendant was originally given four peremptory challenges and the Commonwealth received eight peremptory challenges. Initially, fourteen prospective jurors were seated in the jury box, and questioned individually. After the questioning was completed, the court and counsel conferred outside the hearing of the panel and discussed which venire persons should be excused for cause. Five panelists were excused. Of the remaining nine, the Commonwealth exercised its preemptory challenges as to three of them, Jurors No. 3, 12 and 14. The defense struck one. Of the first fourteen, five were seated on the jury.

Subsequent to the dismissal of the stricken jurors, defense counsel raised an objection,

pursuant to *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), stating that both [defense] lawyers believed the Commonwealth was exercising its challenges in a discriminatory manner, as the three stricken venire persons were all [African–American] women. It should be noted at the outset that [within] the pool of fifty potential jurors, thirty-four were female. There is no indication in the court record as to the racial composition of the group. The prosecuting attorney stated his reasons for striking each of the panelists. The court found his reason for striking Juror No. 3 to be valid and non-discriminatory. The court also found his reasons for striking Jurors No. 12 and 14 to be suspect. Because fewer than half the needed jurors had yet been selected, the court, within its sound discretion, chose to remedy any possible prejudice by granting the defense an additional peremptory strike, instead of granting the defense request to recall the two jurors who had already been excused from the room. The record reflects that the final racial composition of the jury was six [African–American] jurors and six white jurors. Of the two alternates, one was white and one was [African American]. A review of their names reflects that the final panel consisted of eleven women and one man, and both alternates were women. Of the remaining panelists questioned, the Commonwealth struck only two more jurors, while the defense exercised an additional eight strikes.

(Trial Court Opinion, January 28, 1998 at 1–3.) The jury convicted Appellant of robbery[1] and criminal conspiracy.[2] Appellant now appeals from his judgment of sentence.

¶ 4 Appellant raises the following issue for our review:

DID THE LOWER COURT ERR IN REFUSING A DEFENSE REQUEST TO SEAT TWO JURORS WHOM THE COURT FOUND TO HAVE BEEN PEREMPTORILY CHALLENGED IN A DISCRIMINATORY MANNER BY THE PROSECUTOR?

(Appellant's Brief at 3).

¶ 5 Appellant makes two arguments on appeal. He claims that the Commonwealth intentionally exercised peremptory challenges to exclude two African–American females from the juror pool on account of race and/or gender in violation of *Batson, supra.* Appellant also asserts that the trial court abused its discretion when it later refused to seat the two venirepersons who had already been excused because this refusal was improper and inconsistent with the goals of *Batson, supra.* Therefore, Appellant concludes, he is entitled to a new trial.

¶ 6 In response, the Commonwealth argues that Appellant did not, at the trial level or on appeal, make a *prima facie* showing of purposeful discrimination in the jury selection process. Moreover, the Commonwealth contends, the trial court gave Appellant a suitable remedy within the court's discretion. Thus, the Commonwealth concludes, Appellant's judgment of sentence should not be disturbed. We agree.

¶ 7 Pennsylvania law makes clear that the *Batson* rationale applies in cases involving claims of gender-based as well as race-based exclusion in the jury selection/elimination process. *See Commonwealth v. Clark*, 551 Pa. 258, 710 A.2d 31 (1998); *Commonwealth v. Jones*, 542 Pa. 464, 668 A.2d 491 (1995), *cert. denied,* 519 U.S. 826, 117 S.Ct. 89, 136 L.Ed.2d 45 (1996). Applying the rationale of *Batson* to a claim of purposeful discrimination based on race and/or gender, Pennsylvania law requires the following:

To establish ... a [*prima facie*] case, a defendant must show that he is of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact ... that peremptory challenges constitute a jury selection practice that permits "those to discriminate who are of a mind to discriminate." Finally, the defendant must

---

**1.** 18 Pa.C.S.A. § 3701.

**2.** 18 Pa.C.S.A. § 903.

show that these facts *and any other relevant circumstances* raise an inference that the prosecutor used that practice to exclude venire[persons] for the petit jury on account of their race. This combination of factors in the empanelling of the petit jury, as in the selection of the venire, raises the necessary inference of purposeful discrimination.

*Clark, supra* at 279, 710 A.2d at 41 (citations omitted) (emphasis added). In the context of peremptory challenges, Pennsylvania law further requires the defendant, in his or her *prima facie* case, to make a record specifically identifying:

1. the race or gender of all venirepersons in the jury pools;

2. the race or gender of all venirepersons remaining after challenges for cause;

3. the race or gender of those removed by the prosecutor; and,

4. the race or gender of the jurors who served and the [race or] gender of jurors acceptable to the Commonwealth who were stricken by the defense.

*Commonwealth v. Spence*, 534 Pa. 233, 627 A.2d 1176 (1993). **After such a record is established**, the trial court must consider the totality of the circumstances to determine whether the defendant has made a *prima facie* case of purposeful discrimination. *Commonwealth v. Thomas*, 552 Pa. 621, 717 A.2d 468 (1998); *Commonwealth v. Rico*, 551 Pa. 526, 711 A.2d 990 (1998) (citing *Jones, supra* ). The striking of a number of individuals belonging to some cognizable group, alone, is not dispositive of a *Batson* violation. *Rico, supra* (citing *Commonwealth v. Abu-Jamal*, 521 Pa. 188, 555 A.2d 846 (1989), *cert. denied*, 498 U.S. 881, 111 S.Ct. 215, 112 L.Ed.2d 175 (1990)). *See also Commonwealth v. Simmons*, 541 Pa. 211, 662 A.2d 621 (1995), *cert. denied*, 516 U.S. 1128, 116 S.Ct. 945, 133 L.Ed.2d 870 (1996) (citing *Commonwealth v. Wilson*, 538 Pa. 485, 649

A.2d 435 (1994), *cert. denied*, 516 U.S. 850, 116 S.Ct. 145, 133 L.Ed.2d 91 (1995) ("standing alone, fact that prosecutor used 10 to 12 challenges to exclude [African–American] persons from jury was insufficient to establish a *Batson* violation")); *Commonwealth v. Jackson*, 385 Pa.Super. 401, 561 A.2d 335 (1989), *affirmed*, 526 Pa. 294, 585 A.2d 1001 (1991) (no *per se* rule that *prima facie* case exists if prosecutor uses peremptory challenge to strike [African–American] individuals).[3]

¶ 8 If, after considering the totality of the circumstances, the trial court determines that a defendant has established a *prima facie* case of purposeful discrimination, the court may then ask the prosecutor to explain the basis for the strike. *Simmons, supra*. Thus, the burden of production shifts to the Commonwealth only after the defendant has made a *prima facie* showing of intentional race and/or gender discrimination. *Id.* (citing *Batson, supra* at 97, 106 S.Ct. at 1723, 90 L.Ed.2d at 88). Only then should the prosecutor be required to articulate a race or gender neutral reason for its challenges. *Thomas, supra* ; *Commonwealth v. Hardcastle*, 549 Pa. 450, 701 A.2d 541 (1997). "The reasons for the challenge need not rise to the level of a 'for cause' challenge." *See Rico, supra* (citing *Jones, supra* at 520 n. 31, 668 A.2d at 519 n. 31).

¶ 9 In the instant case, Appellant failed to create an adequate record at the trial level as required by *Spence, supra*, in that Appellant did not make a record of the race/gender of all (1) venirepersons in the jury pool; (2) venirepersons removed by the Commonwealth; (3) venirepersons remaining after strikes for cause; or, (4) jurors who were acceptable to the Commonwealth but were peremptorily stricken by the defense. Appellant's record on appeal is also flawed as Appellant presumes the adequacy of his *Batson* claim. For the following reasons, we conclude that Appellant presumption is erroneous.

---

**3.** The trial court relies on *Commonwealth v. Dinwiddie*, 529 Pa. 66, 601 A.2d 1216 (1992) (plurality), where the exercise of five of six peremptory challenges against African–American venirepersons sufficed to established a *prima facie Batson* showing. In *Dinwiddie*, there were other factors to support the Court's decision. Moreover, the subsequent binding authority of *Rico, supra*, *Simmons, supra, and Wilson, supra* hold differently. Thus, we follow the subsequent binding precedent.

¶ 10 Here, the first round of the *voir dire* in Appellant's case consisted of fourteen venirepersons. The Commonwealth used its peremptory challenges to strike venirepersons Nos. 3, 12, and 14. Appellant objected to the Commonwealth's peremptory strikes after the fourteen venirepersons had been questioned, after the specific venirepersons had been excused and had already left the room, and before less than half of the jury had been chosen. More importantly, Appellant objected on the sole basis that the stricken jurors were African American females. Appellant presented no other relevant facts and circumstances to raise a legitimate inference that the prosecutor had sought to exclude these venirepersons from the petit jury on account of their race and/or gender. *See Batson, supra* (looking at a "pattern of strikes" and the prosecutor's questions and statements during *voir dire* as examples illustrative of facts and circumstances that may be used to support or refute an inference of discriminatory purpose).

¶ 11 On appeal, the only part of the *voir dire* transcript provided in the certified record is the transcript for venirepersons No. 12 through No. 14. Appellant did not provide us with the *voir dire* transcript for the remaining forty-one prospective jurors. Additionally, the transcript available gives no indication from the prosecutor's questions or comments that he was trying to manipulate the composition of the jury by race or gender. Also, Appellant's *Batson* claim was made very early in the jury selection process, when only five jurors were seated. Under the circumstances of this case, the trial court's response to Appellant's *Batson* claim was premature, albeit prompt and made in an effort to take corrective action before jury selection was completed. *See Rico, supra.*

Nevertheless, we emphasize the necessity of a *prima facie* showing *before* any party is entitled to an explanation for a peremptory strike. *See Thomas, supra ; Rico, supra.* Thus, we conclude that the trial court erred when it immediately required the Commonwealth to give reasons for its peremptory strikes because, without more, Appellant had not yet made a *prima facie* showing of discriminatory intent.[4] Therefore, the Commonwealth should not have been required, at that time, to give neutral reasons for its strikes. *See id.* Accordingly, the record does not adequately support the trial court's action in this matter.

¶ 12 Moreover, our independent review of the record provided on appeal shows nothing to indicate that this case was particularly race or gender sensitive.[5] *See Commonwealth v. Garrett,* 456 Pa.Super. 60, 689 A.2d 912 (1997), *appeal denied,* 549 Pa. 712, 701 A.2d 575 (1997) (reiterating that race of victim and race of defendant are factors to consider in determining whether party established *prima facie Batson* case.) From the *voir dire* sheets contained in the certified record as well as a list of the names of the forty-two venirepersons questioned, we can discern that at least twenty-nine of the first forty-two persons listed (approximately 69%) were females.[6] Thus, the disproportionate number of females in the jury pool could alone account for the number of females stricken. We are completely unable to identify the venire members by race. There may also have been a disparate number of African Americans in the jury pool. *See Thomas, supra* (noting that, at time of *Batson* challenge, all but one of the prospective jurors questioned had been African American). According to the record, however, the final jury

4. We note that there was no explicit finding by the trial court that Appellant had made a *prima facie Batson* showing. We have only the trial court's apparent dissatisfaction with the Commonwealth's reasons for its peremptory strikes. It appears that, in an abundance of caution, the trial court granted the defense additional peremptory challenges, knowing that venirepersons Nos. 12 and 14 had already been dismissed. We do not construe the trial court's remedy as dispositive of either a *prima facie* showing by the defense or any purposeful discriminatory selection by the Commonwealth.

5. The only information of record is that Appellant is an African American and the victim is possibly Asian.

6. The number of females in the group may be higher because some of the names listed can be either male or female names. Thus, we are unable to determine an exact number according to gender.

included six African–American persons and one African–American alternate. Also, the final jury consisted of eleven females and one male; both of the alternates were female. *See Clark, supra* (stating that final composition of empanelled jury entitled to some weight on review of *Batson* claim). Considering all of the information gleaned from the certified record, we conclude that the record available simply does not legitimize Appellant's *Batson* challenge on the basis of race or gender. *See Jones, supra* (conducting independent review of record to determine merit of *Batson* challenge).

¶ 13 With respect to the trial court's decision to give additional peremptory strikes to the defendants, we recognize that the remedy for a legitimate *Batson* claim is a matter within the discretion of the trial court. *Batson, supra* at 476 U.S. at 99 n. 24, 106 S.Ct. at 1725 n. 24, 90 L.Ed.2d at 90 n. 24 (making no attempt to instruct state and federal courts how best to implement *Batson* holding). *See also McCrory v. Henderson,* 82 F.3d 1243, 1247 (2nd Cir.1996) (citing *Batson* ); *Koo v. McBride,* 124 F.3d 869, 873 (7th Cir.1997) (stating that state courts are to be accorded significant latitude in fashioning *Batson* remedy).

¶ 14 In the instant case, the trial court had already excused the stricken venirepersons who then left the room before Appellant made his *Batson* claim. Once these venirepersons had left the room, they were beyond the supervision of the trial court. *See generally Commonwealth v. Kerpan,* 508 Pa. 418, 498 A.2d 829 (1985) (holding that trial courts must guard against premature discussions among jurors). Refusing Appellant's request to recall and seat these specific venirepersons, the trial court acted to safeguard the integrity of the judicial process as a whole.

7. We disagree with Appellant's contention, relying on *Powers v. Ohio,* 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), that the trial court was compelled to seat venirepersons Nos. 12 and 14 to protect their rights to participate in the judicial process. (*See* Appellant's Brief at 8.) *Powers* held that, under the Equal Protection Clause, a criminal defendant may object to race-based exclusions of jurors through the use of

 ¶ 15 Mindful of the varying jury selection methods at the trial level, *see Batson, supra,* we hold that the remedy for properly sustained *Batson* objections lies within the sound discretion of the trial court and will not be disturbed on appeal, absent an abuse of that discretion. Such remedy may involve, among other things, calling additional jurors to the venire, granting additional challenges, seating the challenged jurors; or beginning a new jury selection. The trial court's discretion will not be disturbed especially when the challenged venirepersons have already been excused. Thus, the trial court's chosen remedy in this case of giving the defendants additional peremptory challenges, was within its discretion and will not be gainsaid on appeal.[7] Accordingly, we affirm Appellant's judgment of sentence.

¶ 16 Judgment of sentence affirmed.

peremptory challenges regardless of whether the defendant and the excluded jurors share the same race. *Id. Powers* emphasizes the right of individual persons *not* to be excluded from a jury on account of race or gender. However, *Powers* does not hold so broadly that an individual venireperson has the right to sit on any particular petit jury. Accordingly, *Powers* does not compel the specific relief Appellant requests.